Jacqueline BARNDT

v.

WISSAHICKON SCHOOL DISTRICT

and

Wissahickon Board of Directors

and

William Sabia, Matthew Coleman, Elizabeth Allen, Louise North, Robert Russell, Robert G. Moore, George T. Bauer, Theodore Thompson, Robert J. Correnty, Wesley E. Gorg, Donald Richwagon, Richard S. Thorton, and Phyllis Catz, all of the above-named Individually and as members of the Board of School Directors of Wissahickon School District

and

William H. Stoutenburgh, Individually and as Superintendent of Schools of Wissahickon School District.

Civ. A. No. 78-3396.

United States District Court,
E. D. Pennsylvania.

Aug. 13, 1979.

Leigh P. Narducci, Narducci & Signore, P. C., Norristown, Pa., for plaintiff.

Curtis Wright, Michael O'Hara Peale, Jr., Timoney, Knox, Hasson & Weand, Ambler, Pa., for defendants.

## OPINION

JOSEPH S. LORD, III, Chief Judge.

Plaintiff in this civil rights suit alleges that she was unconstitutionally dismissed from a tenured teaching position in the Wissahickon School District. Contending that Article XI of the Pennsylvania Public School Code pursuant to which she was dismissed, 24 P.S. § 11–1101 *et seq.*, violates both the due process and equal protection clauses both facially and as applied, plaintiff seeks injunctive and monetary relief. I have jurisdiction under 28 U.S.C. § 1343(3) and 42 U.S.C. § 1983. The parties have cross-moved for summary judgment. For the reasons discussed below, I will deny plaintiff's and grant defendants' motion.

I.

Plaintiff Barndt was hired by the Wissahickon School District in June 1964 as a junior high school music teacher. In July 1973, William Stoutenburgh, Superintendent of Schools for the Wissahickon District, notified plaintiff that her professional employee rating for the 1972–1973 school year was unsatisfactory. In April 1974, the Superintendent notified Barndt that her 1973–74 performance was again unsatisfactory. Each notice to plaintiff of her unsatisfactory rating was accompanied by supporting documents.

Shortly after Barndt's second consecutive unsatisfactory rating, Superintendent Stoutenburgh submitted to the Board of Directors of the Wissahickon School District (School Board) a proposed statement of charges against plaintiff. Stoutenburgh's proposal, stating twenty-five counts of alleged incompetence, negligence and wilfull violation of school laws, was accepted by School Board resolution on June 27, 1974. Between September 1974 and January 1975 the Board held fourteen public hearings on the charges. Barndt was present and represented by counsel throughout the proceedings. On January 27, 1975, four days after the last dismissal hearing, the School Board voted publicly, unanimously and without discussion to terminate plaintiff's employment for the reasons stated in the twenty-five counts.

Barndt was notified formally on January 29, 1975 by mail that the Board had found the charges against her supported by the evidence presented at the fourteen hearings and that her dismissal was therefore being ordered. Plaintiff appealed her termination to the Pennsylvania Secretary of Education, who on January 27, 1976 affirmed the Board's decision. The Secretary's opinion was appealed to the Pennsylvania Commonwealth Court, which on February 7, 1977 again affirmed the dismissal decision. *Barndt v. Board of School Directors*, 28 Pa.Cmwlth. 482, 368 A.2d 1355 (Cmwlth.Ct. 1977). The Supreme Court of Pennsylvania denied allocatur per curiam in December 1977 and plaintiff commenced this action in early 1978.

## II.

Plaintiff has moved for summary judgment, arguing that the Pennsylvania statute under which her employment was terminated is constitutionally deficient in four facial respects: (A) due process requires that the body responsible for dismissal decisions be impartial and the statutorily designated body in Pennsylvania, the district school board, because of its pecuniary interest in teacher employment, is not unbiased; (B) judicial appeal *de novo* from a school board dismissal decision is not permitted by the statute; (C) the statute does not specify rules of evidence for a dismissal hearing and this failure unfairly leaves a teacher unable to prepare a defense; and (D) the statute is repugnant to equal protection principles because tenured and non-tenured teachers are irrationally treated differently for dismissal purposes, to the detriment of tenured teachers. Plaintiff's allegations of facial invalidity are unpersuasive and I will deny her motion.

■ (*A*) "A biased decisionmaker [is] constitutionally unacceptable [and] 'our system of law has always endeavored to prevent even the probability of unfairness.'" *Withrow v. Larkin*, 421 U.S. 35, 47, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975), *quoting In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955). Plaintiff complains that this axiom of due process is violated by the Pennsylvania statute. Section 11–1129 of the Public School Code grants authority to dismiss tenured teachers to the local school board, a body that has, as employer, a pecuniary interest in a teacher's discharge allegedly preclusive of impartiality. The statute for this reason is, Barndt insists, on its face "constitutionally unacceptable."

The complete answer to plaintiff's unfairness argument is citation to *Hortonville Joint School District No. 1 v. Hortonville Education Association*, 426 U.S. 482, 96 S.Ct. 2308, 49 L.Ed.2d 1 (1976). In *Hortonville*, the Court was asked to invalidate as inconsistent with due process the dismissal of striking teachers by a school board that had been negotiating unsuccessfully with the strikers. Observing that plaintiff teachers "seem to argue that the Board members had some personal or official stake in the decision whether the teacher should be dismissed," Chief Justice Burger concluded that to fear that "the Board members had the kind of personal or financial stake in the decision that might create a conflict of interest" was not justified. 426 U.S. at 491–92, 96 S.Ct. at 2314. "[I]n light of the important interest in leaving with the Board the power given by the state legislature," the Court held that a school board's pecuniary interest as employer in the expense of paying a tenured teacher "is not enough to overcome the presumption of honesty and integrity in policymakers with decisionmaking power. Accordingly . . . the Due Process Clause of the Fourteenth Amendment did not guarantee [the teachers] that the decision to terminate their employment would be made or reviewed by a body other than the School Board." 426 U.S. at 497, 96 S.Ct. at 2316.

Barndt correctly urges that the *Hortonville* case is distinct from her suit because *Hortonville* involved only a policy decision, and not preliminary factfinding by the school board, the teachers there having admitted that they were on strike. 426 U.S. at 494, 96 S.Ct. 2308. However, this factual difference is analytically irrelevant to the impartiality concern. Plaintiff offers no reason why the Wissahickon School Board's pecuniary interest in her employment would impermissibly bias its factfinding but not its policymaking and we can imagine none. The attempted distinction between the alleged unfairness here and that treated in *Hortonville* fails, the Supreme Court opinion there is dispositive and plaintiff's first due process argument is rejected.

■ (*B*) Section 11–1131 of the challenged statute allows a teacher aggrieved by a school board decision to petition the Pennsylvania Secretary of Education for review of the board action. Section 1132 provides that the decision of the Secretary of Education may be appealed to the Pennsylvania Commonwealth Court under the judicial review terms of the Pennsylvania

Administrative Law Code, 71 P.S. § 1710.41 *et seq.* Section 1710.44 states that the Commonwealth Court "shall hear the appeal without a jury on the record . . . ." *De novo* appeal to a judicial body is thus not available to a tenured teacher. Barndt complains that this absence of *de novo* judicial appeal "deprives plaintiff of any effective means to a hearing before an impartial tribunal." The dispositive response to this complaint is, oddly, found in plaintiff's memorandum in support of her motion for summary judgment. Barndt there acknowledges "that there is no Constitutional right to an appeal *de novo.*" Because the absence of *de novo* judicial review implicates no constitutional right, plaintiff's contention that the statute is in this regard facially infirm fails.

■ (*C*) Barndt's third due process allegation of facial invalidity is that the failure of the Pennsylvania statute to prescribe a code of evidence for the conduct of dismissal hearings deprives teachers of the ability to prepare intelligently their defenses in light of established evidentiary rules. I hold that plaintiff lacks standing to raise this claim.

Immersion in the conceptual quagmire of standing is not necessary to conclude that to challenge a statute in federal court a plaintiff must credibly allege a logical nexus between the injury suffered and the purported statutory defect. *Flast v. Cohen,* 392 U.S. 83, 102, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). Review of the 1,585 page verbatim transcript of plaintiff's dismissal hearings before the Wissahickon Board compels the judgment that the Barndt proceedings were conducted pursuant to common law rules of evidence and that plaintiff's counsel handled her case accordingly. Because the statutory failure to specify evidentiary rules thus did not prejudice plaintiff in her defense, she fails to satisfy the standing requirement of a nexus between her dismissal and the alleged constitutional imperfection in the Public School Code. I therefore am powerless to hear this part of her complaint.

■ (*D*) Plaintiff's final Fourteenth Amendment challenge to the facial validity of the statute is her equal protection argument that tenured teachers are impermissibly treated differently for dismissal purposes than both non-tenured teachers and other licensed professionals such as lawyers, doctors and dentists. This contention too is flawed.

The Public School Code creates various classes of teachers, only one of which is tenured. Unlike dismissal of tenured teachers, which is covered by the School Code, dismissal of non-tenured teachers is governed by the local agency law, 53 P.S. § 11301. Local agency law procedures are not identical to those mandated by the School Code. Plaintiff argues that the application of different procedures to dismissals of tenured and non-tenured teachers denies tenured teachers like herself equal protection of the laws.

The standard against which the challenged differences in treatment must be measured is succinctly stated in *City of New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2517, 49 L.Ed.2d 511 (1976):

> "When local economic regulation is challenged solely as violating the Equal Protection Clause, this Court consistently defers to legislative determinations as to the desirability of particular statutory discriminations [citations omitted]. Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest."

The distinction between tenured and non-tenured teachers touches neither a fundamental right nor a suspect classification. Accordingly, the procedural line between tenured and non-tenured teachers will not be erased unless irrational.

Plaintiff, acknowledging the legitimacy of the state's interest in designing a dismissal scheme, cites two differences allegedly exemplary of the irrational discrim-

ination worked against tenured teachers by the separate procedural regimes: (a) the availability to non-tenured but not tenured teachers of an appeal *de novo* to the court of common pleas, and (b) the local agency law requirement that the administrative tribunal—the school board here—make a written decision. Neither difference is irrational.

 The local agency law permits, but does not require, the court of common pleas to hear *de novo* an appeal from an agency decision where a full record of the proceedings below was not made. 53 P.S. § 11308(a). Where a complete transcript of the agency proceedings was made, the court must hear the appeal without a jury on the certified record. 53 P.S. § 11308(b). All judicial appeals by tenured teachers are to be heard on the record. 24 P.S. § 11–1132; 71 P.S. § 1710.44. However, all dismissal proceedings involving tenured teachers must be recorded at the school board's expense. 24 P.S. § 11–1127. Therefore, tenured and non-tenured teachers who are similarly situated—*i. e.*, whose dismissal hearings have been recorded—are not treated differently; both are denied a *de novo* judicial appeal. The different procedures are applied to different situations—*de novo* appeal where there is no record, no *de novo* appeal where there is. Such a distinction is certainly rational.

Barndt's second illustration of alleged irrationality is also unconvincing. Section 11306 of Title 53 requires all agency adjudications to be in writing. The Public School Code does not include this requirement. What the School Code requires instead is that the board furnish the tenured teacher with a detailed written statement of the charges against her before the hearing, 24 P.S. § 11–1127, and that written notice of the board's decision be sent promptly to the teacher after the hearing, 24 P.S. § 11–1130.

 Because the notice of dismissal sent to Barndt incorporated the earlier twenty-five count statement of charges, plaintiff received the functional equivalent of a written adjudication. *See* III(B) *infra*.

I therefore doubt that she has standing to complain that such a writing is not expressly required, she having suffered no prejudice from that absence. Assuming *arguendo* only that the claim is properly raised, I conclude that because a written statement of charges is required in tenured teacher dismissals, but not in non-tenured cases, to permit simply a written notice of the board's decision in a tenured teacher proceeding, rather than require the written adjudication mandated in non-tenured dismissals, is not irrational. Such a distinction is perhaps not irresistably logical, but it is not so barren of sense as to justify judicial invalidation.

 Finally, I reject plaintiff's contention that tenured teachers are invidiously and irrationally subjected to different dismissal procedures than are lawyers, doctors and dentists. Although the procedures are fundamentally different, in that lawyers, doctors and dentists are statutorily entitled to a delicensing hearing before a state board composed in part of their professional peers, this difference cannot be said to lack all foundation in reason. Teachers in numerous and obvious ways are dissimilarly situated to the other professionals listed— for example, teachers like Barndt are public employees; lawyers, doctors and dentists ordinarily are not—and accordingly may be supervised under a separate set of procedures.

Because each of plaintiff's facial challenges to the Public School Code fails, I will deny her motion for summary judgment.

## III.

Defendants have moved for summary judgment, contending that none of the six issues of fact advanced by plaintiff as preclusive of summary disposition is genuine. I agree. Defendants are entitled to judgment as a matter of law.

 Procedurally, plaintiff objects that defendants' motion is not accompanied by affidavits as required by F.R.Civ.P. 56. This objection is wrong for two reasons: (a) defendants' motion is accompanied by affi-

davits where relevant; and (b) Rule 56 requires only that a party opposing a motion for summary judgment counter any affidavits presented by the moving party with his own affidavits, not that a party moving for summary judgment in all cases support his motion with affidavits. Exhibits, such as the voluminous ones submitted by defendants here, are sufficient to support a motion for summary judgment.

Turning to the merits of defendants' motion, the issues of fact that plaintiff contends are genuine and material, and the reasons why they are not are as follows:

■ (*A*) Barndt alleges that the admission of hearsay testimony at her dismissal hearings unconstitutionally deprived her of the due process right of confrontation of witnesses. Plaintiff has failed to specify the objectionable statements and the prejudice that they caused, although she did complain at oral argument that evaluations of her performance filed by pupils and parents were summarized by Superintendent Stoutenburgh in his testimony.

I have scanned the 1,585 page transcript of the School Board hearings and conclude that plaintiff's complaint that she was exposed to an unconstitutional level of hearsay is unfounded. The record reveals that Barndt's counsel raised hearsay objections, for example p. 718a of defendants' exhibit 1, and that questions calling for a hearsay response were withdrawn, for example p. 742a of exhibit 1. Further, the only evidence that plaintiff cites as objectionable—the complaints lodged against Barndt by pupils and parents—was not hearsay because admitted not for the truth of those statements but rather as proof of public opinion, a material consideration in a dismissal proceeding. I thus need not reach the question of the constitutionally tolerable level of hearsay, *California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), to decide that plaintiff's allegation raises no genuine issue of material fact.

■ (*B*) Plaintiff alleges that the School Board's failure to present her with a written adjudication of her dismissal was a violation of due process. The January 29 letter sent to Barndt by the Secretary of the School Board informing her of the unanimous vote that she be discharged stated that the Board found the twenty-five count statement of charges supported by the evidence heard at the fourteen dismissal hearings. This incorporating reference in plaintiff's dismissal letter to the written charges against her is, I think, tantamount to a written adjudication of Barndt's case and satisfies the requirements of due process.

(*C*) Plaintiff vaguely alleges that the procedure by which the School Board accepted the twenty-five statement of charges against her and set the matter for dismissal hearings was improper. The record discloses not a hint of constitutionally suspicious proceedings by the Board and I must conclude that no genuine issue of fact is raised by this allegation.

■ (*D*) Plaintiff alleges that she was denied upon request various materials necessary to her defense. Although defendants concede that Barndt was denied access to certain sensitive documents, such as confidential pupil performance reports, plaintiff does not deny that the information contained in these papers was made available to her at the final hearings. I can discern in the record not the merest suggestion of prejudice to Barndt's defense caused by this form of disclosure and I find no genuine issue of material fact.

(*E*) Plaintiff objects to the role of the School Board's counsel in her dismissal, alleging that he unconstitutionally served both as counsel to the Board during its adjudication of her case and as counsel to the Board during her appeal of the Board's decision to the Secretary of Education and the Commonwealth Court. This bizarre contention raises neither a genuine nor a material issue of fact, the conduct of counsel for the Board being both admitted and perfectly proper.

■ (*F*) Finally, plaintiff alleges that Superintendent Stoutenburgh unconstitutionally performed the roles of prosecutor,

witness and judge at her dismissal hearings. This allegation is anchored in the statutory provision granting the superintendent a seat, but not a vote, on the district school board, 24 P.S. § 10–1081. Barndt argues that because Stoutenburgh prepared the charges against her and testified against her at the hearings, his statutory seat on the Board intolerably commingled the duties of prosecutor and judge.

I need not consider whether a due process problem arises where a district superintendent actually takes a seat on the local board. Defendants have accompanied their motion for summary judgment with an affidavit given by Robert Russell, presently Secretary of the Board of School Directors of the Wissahickon School District and at all relevant times a member of the Board, swearing that Superintendent Stoutenburgh never assumed his statutory seat on the School Board. Plaintiff has failed to rebut with counter-affidavit defendants' sworn statement, and therefore has failed to put this potentially material fact in genuine issue as required by Rule 56.

Further, there is nothing in the record from which an inference of unconstitutional commingling of duties could be drawn. The School Board hearings on plaintiff's dismissal ended on January 23, 1975. No meeting was held between that time and January 27, 1975. On January 27, the School Board, in a public meeting, voted unanimously without discussion to discharge Barndt. The total absence of discussion by the Board between the end of the evidentiary hearings and the dismissal vote conclusively rebuts any contention of unfair influence by the Superintendent. No genuine issue of fact is raised by this allegation.

Barndt's complaint raises no issues of fact preclusive of summary disposition and defendants are entitled to judgment as a matter of law. Accordingly, I will grant the motion for summary judgment filed by defendant Wissahickon School District and joined in by all defendants. The various other motions filed by individual defendants will be denied as moot in light of my granting of the umbrella motion.