# CITY OF NEW ORLEANS ET AL. v. DUKES, DBA LOUISIANA CONCESSIONS

No. 74–775.   Argued November 11, 1975—Decided June 25, 1976

*Joel P. Loeffelholz* argued the cause for appellants. With him on the brief was *Blake G. Arata.*

*Joseph Neves Marcal III* argued the cause and filed a brief for appellee.

PER CURIAM.

The question presented by this case is whether the provision of a New Orleans ordinance, as amended in 1972, that excepts from the ordinance's prohibition against vendors' selling of foodstuffs from pushcarts in the Vieux Carre, or French Quarter, "vendors who have continuously operated the same business within the Vieux Carre . . . for eight or more years prior to January 1, 1972 . . ." denied appellee vendor equal protection of the laws in violation of the Fourteenth Amendment.[1]

Appellee operates a vending business from pushcarts throughout New Orleans but had carried on that business in the Vieux Carre for only two years when the ordinance was amended in 1972 and barred her from

---

[1] The pertinent provision of the New Orleans ordinance, c. 46, §§ 1 and 1.1 of the Code of the City of New Orleans, as amended August 31, 1972, provides:

"Vendors who have continuously operated the same business within the Vieux Carre under the authority of this Chapter for eight or more years prior to January 1, 1972 may obtain a valid permit to operate such business within the Vieux Carre."

continuing operations there.[2] She had previously filed an action in the District Court for the Eastern District of Louisiana attacking the validity of the former version of the ordinance,[3] and amended her complaint to challenge the application of the ordinance's "grandfather clause"—the eight-years-or-more provision—as a denial of equal protection. She prayed for an injunction and declaratory judgment. On cross-motions for summary judgment, the District Court, without opinion, granted appellant city's motion. The Court of Appeals for the Fifth Circuit reversed. 501 F. 2d 706 (1974). We postponed the question of this Court's jurisdiction to a hearing on the merits, 421 U. S. 908 (1975). We hold that we have jurisdiction of appellant's appeal, and on the merits reverse the judgment of the Court of Appeals.

The Vieux Carre of the city of New Orleans is the heart of that city's considerable tourist industry and an integral component of the city's economy.[4] The sector plays a special role in the city's life, and pursuant to the Louisiana State Constitution, c. 8 of Art. V of the city's Home Rule Charter grants the New Orleans City Council power to enact ordinances designed to preserve its distinctive charm, character, and economic vitality.

Chapter 46 of the Code of the City of New Orleans sets up a comprehensive scheme of permits for the conduct of various businesses in the city. In 1972, the Code was amended to restrict the validity of many of these per-

---

[2] Most of appellee's sales, particularly during the summer months, were made in the Vieux Carre.

[3] Jurisdiction was invoked pursuant to 28 U. S. C. §§ 1331, 1343 (3), (4), and 2201–2202. The equal protection violation was alleged to constitute a violation of 42 U. S. C. §§ 1983, 1985.

[4] See generally 2 App. 31–63 (Excerpts from Comprehensive Study Plan and Program for the Vieux Carre Under a Demonstration Grant from Department of Housing and Urban Development).

mits to points outside the Vieux Carre. However, even as to those occupations—including all pushcart food vendors—which were to be banned from the Vieux Carre during seasons other than Mardi Gras, the City Council made the "grandfather provision" exception. Two push-cart food vendors—one engaged in the sale of hot dogs and the other an ice cream vendor—had operated in the Vieux Carre for 20 or more years and therefore qualified under the "grandfather clause" and continued to operate there. The Court of Appeals recognized the "City Council's legitimate authority generally to regulate business conducted on the public streets and sidewalks of the Vieux Carre in order to preserve the appearance and custom valued by the Quarter's residents and attractive to tourists," 501 F. 2d, at 709, but nevertheless found that the Council's justification for the "grandfather" exception was "insufficient to support the discrimination imposed" and thus deprived appellee of equal protection. *Id.*, at 711. Stating expressly that this Court's decision in *Morey* v. *Doud,* 354 U. S. 457 (1957), was "our chief guide in resolving this case," 501 F. 2d, at 710, the Court of Appeals focused on the "exclusionary character" of the ordinance and its concomitant "creation of a protected monopoly for the favored class member." *Id.*, at 712–713. The "pivotal defect" in the statutory scheme was perceived to be the fact that the favored class members need not "continue to operate in a manner more consistent with the traditions of the Quarter than would any other operator," *id.*, at 711, and the fact that there was no reason to believe that length of operation "instills in the [favored] licensed vendors (or their likely transient operators) the kind of appreciation for the conservation of the Quarter's tradition" that would cause their operations to become or remain consistent with that tradition. *Id.*, at 712. Because these factors demonstrated the "insubstantiality of the relation between the

nature of the discrimination and the legitimate governmental interest in conserving the traditional assets of the Vieux Carre," *id.*, at 713, the ordinance was declared violative of equal protection as applied and the case was remanded for a determination of the severability of the "grandfather clause" from the remainder of the ordinance.

## I

The question of this Court's jurisdiction to hear the appeal need detain us only briefly. Title 28 U. S. C. § 1254 (2) grants jurisdiction to review decisions of the courts of appeals

> "[b]y appeal by a party relying on a State statute held by a court of appeals to be invalid as repugnant to the Constitution, treaties or laws of the United States . . . ."

A municipal ordinance is a "State statute" for purposes of this provision. See *Doran* v. *Salem Inn, Inc.*, 422 U. S. 922, 927 n. 2 (1975); *United Gas Co.* v. *Ideal Cement Co.*, 369 U. S. 134 (1962). See also, *e. g.*, *Dusch* v. *Davis*, 387 U. S. 112 (1967); *Chicago* v. *Atchison, T. & S. F. R. Co.*, 357 U. S. 77 (1958); *City of Detroit* v. *Murray Corp.*, 355 U. S. 489 (1958).

However, it is argued that the Court of Appeals' decision is not "final" under the doctrine enunciated in *Slaker* v. *O'Connor*, 278 U. S. 188 (1929) (involving predecessor statute to § 1254 (2)), and *South Carolina Electric & Gas Co.* v. *Flemming*, 351 U. S. 901 (1956) (*per curiam*), since the Court of Appeals, although finding the statute unconstitutional as applied, remanded the case to the District Court for a determination as to the severability of the "grandfather provision." There may be some question as to the continuing vitality of the "finality" requirement in the context of § 1254 (2), which unlike such jurisdictional statutes as 28 U. S. C. §§ 1257

and 1291 has no "finality" provision in the statute itself. See, *e. g., Doran* v. *Salem Inn, Inc., supra,* at 927; *Chicago* v. *Atchison, T. & S. F. R. Co., supra,* at 82–83. But without resolving that question, we believe that any "finality" test is met under the facts of this case.

The unconstitutionality of the ordinance, in its application to appellee, has been definitely and finally adjudicated by the Court of Appeals, and only a state-law question remains to be decided on remand—whether the statute will be totally invalidated or whether only its "grandfather provision" will be struck down. There is no federal, much less constitutional, question which is yet to be resolved below, and the policy underlying § 1254 (2)—ensuring that state laws are not erroneously invalidated—will in no way be served by further delay in adjudicating the constitutional issue presented. Moreover, since the outcome of the severability question will not moot a difficult constitutional issue in this case, the policy of avoiding needless constitutional decisions would not be furthered by staying our hand. Furthermore, to the extent any "finality" requirement in the context of § 1254 (2) might be premised on the policies of avoiding piecemeal appeals or the rendering of advisory opinions, neither difficulty is likely to eventuate in this case; even if we were to uphold the Court of Appeals' remand for a determination of the severability of the "grandfather provision" under state law, the ruling on remand is not one which would be subject to further review in this Court. On the other hand, a decision by this Court rejecting the constitutional challenge to the statute will obviate the need for further proceedings and bring to a halt the continued disruption of the city's internal economic affairs. Cf. generally, *e. g., Cox Broadcasting Corp.* v. *Cohn,* 420 U. S. 469, 476–478, 480, 485–486 (1975). We accordingly hold that this appeal is prop-

erly before us under 28 U. S. C. § 1254 (2). We therefore turn to the merits.

## II

The record makes abundantly clear that the amended ordinance, including the "grandfather provision," is solely an economic regulation aimed at enhancing the vital role of the French Quarter's tourist-oriented charm in the economy of New Orleans.

When local economic regulation is challenged solely as violating the Equal Protection Clause, this Court consistently defers to legislative determinations as to the desirability of particular statutory discriminations. See, e. g., Lehnhausen v. Lake Shore Auto Parts Co., 410 U. S. 356 (1973). Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest. States are accorded wide latitude in the regulation of their local economies under their police powers, and rational distinctions may be made with substantially less than mathematical exactitude. Legislatures may implement their program step by step, Katzenbach v. Morgan, 384 U. S. 641 (1966), in such economic areas, adopting regulations that only partially ameliorate a perceived evil and deferring complete elimination of the evil to future regulations. See, e. g., Williamson v. Lee Optical Co., 348 U. S. 483, 488–489 (1955). In short, the judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines, see, e. g., Day-Brite Lighting, Inc. v. Missouri, 342 U. S. 421, 423 (1952); in the local economic sphere, it is only the in-

vidious discrimination, the wholly arbitrary act, which cannot stand consistently with the Fourteenth Amendment. See, *e. g., Ferguson* v. *Skrupa*, 372 U. S. 726, 732 (1963).[5]

The Court of Appeals held in this case, however, that the "grandfather provision" failed even the rationality test. We disagree. The city's classification rationally furthers the purpose which the Court of Appeals recognized the city had identified as its objective in enacting the provision, that is, as a means "to preserve the appearance and custom valued by the Quarter's residents and attractive to tourists." 501 F. 2d, at 709. The legitimacy of that objective is obvious. The City Council plainly could further that objective by making the reasoned judgment that street peddlers and hawkers tend to interfere with the charm and beauty of a historic area and disturb tourists and disrupt their enjoyment of that charm and beauty, and that such vendors in the Vieux Carre, the heart of the city's tourist industry,

---

[5] *Ferguson* presented an analogous situation. There, a Kansas statute excepted lawyers from the prohibition of a statute making it a misdemeanor for any person to engage in the business of debt adjusting. We held that the exception of lawyers was not a denial of equal protection, stating, 372 U. S., at 732:

"Nor is the statute's exception of lawyers a denial of equal protection of the laws to nonlawyers. Statutes create many classifications which do not deny equal protection; it is only 'invidious discrimination' which offends the Constitution. . . . If the State of Kansas wants to limit debt adjusting to lawyers, the Equal Protection Clause does not forbid it" (footnote omitted).

We emphasize again that these principles, of course, govern only when no constitutional provision other than the Equal Protection Clause itself is apposite. Very different principles govern even economic regulation when constitutional provisions such as the Commerce Clause are implicated, or when local regulation is challenged under the Supremacy Clause as inconsistent with relevant federal laws or treaties.

might thus have a deleterious effect on the economy of the city. They therefore determined that to ensure the economic vitality of that area, such businesses should be substantially curtailed in the Vieux Carre, if not totally banned.

It is suggested that the "grandfather provision," allowing the continued operation of some vendors was a, totally arbitrary and irrational method of achieving the city's purpose. But rather than proceeding by the immediate and absolute abolition of all pushcart food vendors, the city could rationally choose initially to eliminate vendors of more recent vintage. This gradual approach to the problem is not constitutionally impermissible. The governing constitutional principle was stated in *Katzenbach* v. *Morgan, supra,* at 657:

> "[W]e are guided by the familiar principles that a 'statute is not invalid under the Constitution because it might have gone farther than it did,' *Roschen* v. *Ward,* 279 U. S. 337, 339, that a legislature need not 'strike at all evils at the same time,' *Semler* v. *Dental Examiners,* 294 U. S. 608, 610, and that 'reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind,' *Williamson* v. *Lee Optical Co.,* 348 U. S. 483, 489."

The city could reasonably decide that newer businesses were less likely to have built up substantial reliance interests in continued operation in the Vieux Carre and that the two vendors who qualified under the "grandfather clause"—both of whom had operated in the area for over 20 years rather than only eight—had themselves become part of the distinctive character and charm that distinguishes the Vieux Carre. We cannot say that these judgments so lack rationality that they constitute a constitutionally impermissible denial of equal protection.

Nevertheless, relying on *Morey* v. *Doud,* 354 U. S. 457 (1957), as its "chief guide," the Court of Appeals held that even though the exemption of the two vendors was rationally related to legitimate city interests on the basis of facts extant when the ordinance was amended, the "grandfather clause" still could not stand because "the hypothesis that a present eight year veteran of the push-cart hot dog market in the Vieux Carre will continue to operate in a manner more consistent with the traditions of the Quarter than would any other operator is without foundation." 501 F. 2d, at 711. Actually, the reliance on the statute's potential irrationality in *Morey* v. *Doud,* as the dissenters in that case correctly pointed out, see 354 U. S., at 474–475 (Frankfurter, J., joined by Harlan, J., dissenting), was a needlessly intrusive judicial infringement on the State's legislative powers, and we have concluded that the equal protection analysis employed in that opinion should no longer be followed. *Morey* was the only case in the last half century to invalidate a wholly economic regulation solely on equal protection grounds, and we are now satisfied that the decision was erroneous. *Morey* is, as appellee and the Court of Appeals properly recognized, essentially indistinguishable from this case, but the decision so far departs from proper equal protection analysis in cases of exclusively economic regulation that it should be, and it is, overruled.

The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

MR. JUSTICE MARSHALL concurs in the judgment.

MR. JUSTICE STEVENS took no part in the consideration or decision of this case.