CITIZENS INSURANCE COMPANY OF AMERICA v TUTTLE

Docket No. 78-4737. Submitted October 4, 1979, at Marquette.—Decided April 21, 1980. Leave to appeal applied for.

Plaintiff Edgar Schaedig was driving a tractor and trailer owned by plaintiff Zaiger Beverage Company when he collided with a cow belonging to defendant, Donald Tuttle, which was running at large on the highway. Plaintiff Citizens Insurance Company of America, the insurer of the truck, paid for the damage to the truck and became subrogated to that claim of Zaiger Beverage. Citizens brought an action against defendant and both Schaedig and Zaiger Beverage were permitted to join claims against defendant for lost wages and additional expenses. All of plaintiffs' claims rested on the theory that the proximate cause of the damages was defendant's allowing the cow to run at large on the highway, contrary to law, and defendant's negligence in not fencing in and restraining the cow. The Schoolcraft Circuit Court, William F. Hood, J., granted defendant's motion for summary judgment for failure to state a claim, on the theory that the cause of action was barred by the abolition of tort liability in the no-fault insurance act. Plaintiffs appeal. *Held:*

The statute abolishing "tort liability arising from the ownership, maintenance or use * * * of a motor vehicle" precludes, aside from specifically enumerated exceptions, liability whenever an automobile is involved in any way, even if the cause of the accident could in no way be attributed to the vehicle and applies to situations where the vehicle is owned by either the plaintiff or the defendant. The action does not fall within one of the enumerated exceptions and is, therefore, barred.

Affirmed.

BASHARA, J., dissented. He would hold that the statute does

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 7 Am Jur 2d (Rev), Automobile Insurance § 348.
  Validity and construction of "no-fault" automobile insurance plans. 42 ALR3d 229.
[2] 4 Am Jur 2d, Animals § 114.
  Liability for damage to motor vehicle or injury to person riding therein by animal at large in street or highway. 59 ALR2d 1328.

not preclude recovery of damages occasioned by a cause in no way attributable to a vehicle. He would reverse.

OPINION OF THE COURT

1. INSURANCE — NO-FAULT INSURANCE — AUTOMOBILES — TORT LIA-
   BILITY — STATUTES.

The statute abolishing "tort liability arising from the ownership, maintenance or use * * * of a motor vehicle" precludes, aside from specifically enumerated exceptions, liability whenever an automobile is involved in any way, even if the cause of the accident could in no way be attributed to the vehicle and applies to situations where the vehicle is owned by either the plaintiff or the defendant (MCL 500.3135; MSA 24.13135).

DISSENT BY BASHARA, J.

2. INSURANCE — NO-FAULT INSURANCE — AUTOMOBILES — TORT LIA-
   BILITY — STATUTES.

*The statute abolishing "tort liability arising from the ownership, maintenance or use * * * of a motor vehicle" does not preclude liability where the cause of the accident could in no way be attributed to the vehicle and does not preclude recovery of damages occasioned by the collision of an automobile with a cow negligently left to roam the highway (MCL 500.3135; MSA 24.13135).*

*Davis & Olsen Law Office,* for plaintiffs.

*Nebel & Revord,* for defendant.

Before: ALLEN, P.J., and BASHARA and BEASLEY, JJ.

BEASLEY, J. This is another case of first impression under Michigan no-fault insurance law and, in particular, MCL 500.3135; MSA 24.13135. The question posed is the interpretation to be given to the phrase "tort liability arising from the ownership, maintenance or use within this state of a motor vehicle * * * is abolished", in the light of the peculiar fact situation presented in the instant case.

Plaintiff Edgar Schaedig was driving a tractor

and trailer owned by Zaiger Beverage Company on US Highway 2 in Schoolcraft County when he collided with defendant's cow, which was running at large on the highway. The truck-trailer unit jackknifed, ran into a ditch and suffered extensive damage.

Citizens Insurance Company of America, the insurer of the truck, paid for the damage to the truck and became subrogated to that claim of the Zaiger Beverage Company. Citizens filed suit to recover the amount paid, and both Schaedig and Zaiger were allowed to join the suit to recover lost wages and additional costs respectively. Plaintiffs' claims were based on defendant's allowing the cow to run at large on the highway in violation of MCL 433.11 *et seq.;* MSA 18.789(1) *et seq.,* and, also, that he was negligent in not fencing in and restraining the cow.

Defendant brought a motion for summary judgment pursuant to GCR 1963, 117.2(1), alleging that plaintiffs' cause of action was barred by the no-fault act, MCL 500.3135; MSA 24.13135. The trial judge granted the motion and awarded summary judgment to defendant. Plaintiffs appeal as of right.

MCL 500.3135; MSA 24.13135 provides:

"Sec. 3135. (1) A person remains subject to tort liability for noneconomic loss caused by his ownership, maintenance or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function or permanent serious disfigurement.

"(2) Notwithstanding any other provision of law, tort liability arising from the ownership, maintenance or use within this state of a motor vehicle with respect to which the security required by subsections (3) and (4) of section 3101 was in effect is abolished except as to:

"(a) Intentionally caused harm to persons or property. Even though a person knows that harm to persons or

property is substantially certain to be caused by his act or omission, he does not cause or suffer such harm intentionally if he acts or refrains from acting for the purpose of averting injury to any person, including himself, or for the purpose of averting damage to tangible property.

"(b) Damages for noneconomic loss as provided and limited in subsection (1).

"(c) Damages for allowable expenses, work loss and survivor's loss as defined in sections 3107 to 3110 in excess of the daily, monthly and 3 year limitations contained in those sections. The party liable for damages is entitled to an exemption reducing his liability by the amount of taxes that would have been payable on account of income the injured person would have received if he had not been injured." (Footnotes omitted.)

On appeal, plaintiffs argue that if defendant's tort did not arise from *his* use of a motor vehicle, defendant's liability is not abolished by virtue of § 3135. Defendant counters, arguing that any time a motor vehicle is involved in an accident, tort liability is abolished by this section, and the vehicle owner must look to his own insurance company for coverage.

Thus, the issue is to what extent the Legislature intended to abolish tort liability under MCL 500.3135; MSA 24.13135. If we determine that the Legislature intended that, aside from the enumerated exceptions, tort liability is to be precluded whenever an automobile is involved in any way, even if the cause of the accident could in no way be attributed to the vehicle, we must affirm the ruling of the trial court. We determine that the Legislature did so intend and affirm.

In *Shavers v Attorney General,*[1] the Michigan

---

[1] 402 Mich 554, 627-628; 267 NW2d 72 (1978).

Supreme Court upheld the constitutionality of the no-fault insurance act with respect to the abolition of tort liability for property damage, enumerating four legislative goals which would be served by the no-fault plan:

"First, with the shift from liability to collision insurance resulting from the abolition of tort liability, there would be a new emphasis on the value and repairability of the insured's own motor vehicle; rates would be calculated on the basis of repair costs for that vehicle, rather than, as in liability insurance, on the potential damage to a vehicle of unknown value.

"Second, an additional anticipated effect of relating premium costs to the insured's car was that this system would create incentives for safer cars.

"Third, the abolition of tort liability eliminates the necessity for accident investigations, because a determination of fault is irrelevant to the payment of compensation. The elimination of such investigations, it was hoped, would result in the decreased administrative costs and resultant savings on insurance premiums.

"Finally, by shifting from a liability to a no-fault system which emphasizes the risk to be insured, not the exposure to some unknown third party, the Legislature anticipated that group insurance would become feasible. Group insurance has been shown to be far less expensive to administer and more likely to result in lower costs. Furthermore, this potential for group insurance may draw large life and group insurance underwriters into the automobile insurance field, resulting in beneficial competition." (Footnotes omitted.)

Since a legitimate state interest was involved, the statute's constitutionality was upheld against a due process attack. The court also rejected a claim that the statute unconstitutionally denied equal protection, using the following language which is instructive in analyzing the problem posed in the instant case:

"The different treatment of moving vehicles and tangible property and properly parked vehicles is related to the second conceptual difficulty relating to the use of fault in a no-fault act. Common sense would indicate, and actuarial studies have shown, that in accidents involving motor vehicles and tangible property, the motor vehicle is usually at fault. Consequently, the act makes the motorist strictly liable for the damage he does to tangible property and requires him to purchase insurance for such damage[58]

"The system, however, functions without regard to fault. That is, there is no determination in each accident of who was at fault. Thus, the appellation 'no-fault' is a misnomer only if one concentrates on the initial legislative allocation of responsibility. However, if one looks at the operational effect of the act, it remains a system of insurance without fault."

---

"[58] It is possible that a motorist's insurer will be liable to the owners of stray animals, trains or other non-stationary tangible property which may occasion the damage. The equal protection clause does not, in this context, require that statutory classification be drawn with great precision. *New Orleans v Dukes,* 427 US 297, 303-304; 96 S Ct 2513; 49 L Ed 2d 511 (1976)."[2]

---

In the quoted dictum, the *Shavers* Court appears to have rejected the "fault investigation" requirement even in the case where a stray animal may occasion the damage. Thus, the insurer of the driver of an automobile who does damage to property would be strictly liable for the damage regardless of who was at fault.

Plaintiffs also argue that the language of § 3135 seems to indicate otherwise. MCL 500.3135(1); MSA 24.13135(1) speaks of "tort liability * * * caused by *his ownership, maintenance or use* of a motor vehicle". MCL 500.3135(2); MSA 24.13135(2), states "tort liability *arising from* the ownership, maintenance or use". This language indicates that

[2] *Id.,* 631-632.

the tort liability must *arise from* the ownership of the vehicle. What the language does not state is whether it must be from a vehicle driven by plaintiff, by defendant, or by either. We find that to fulfill the objectives of the Legislature, the statute must be construed to apply to a vehicle "owned, maintained or used" by either plaintiff or defendant. Where ambiguities exist in a statute, or if a statute is susceptible of two or more meanings, courts may construe the statute in a reasonable fashion, considering its purpose and objectives.[3]

Under the circumstances of the case at bar, the fact that the cow was a stray on the highway and, therefore, allegedly caused the accident, does not absolve the motorist's insurance company from liability to pay for the damage to the vehicle. Otherwise, an investigation to determine fault would be required, in contravention of the Legislature's purpose in enacting the no-fault statute.

Under MCL 500.3101; MSA 24.13101, and MCL 500.3121; MSA 24.13121, plaintiffs, as owners of a motor vehicle and trailer, were required to furnish insurance to protect against damage to personal property. If the owner or operator of a vehicle desires to protect against the loss or damage to his vehicle, he must provide for his own insurance. Regardless of who is at fault, one looks to one's own insurance carrier to pay for the damage to property. The effect of § 3135(2) is to do away with tort liability unless a claimant fits within one of the enumerated exceptions to the statute.[4] Since none of the exceptions are applicable in the instant case, the only claims made related to property damage by plaintiff driver.

---

[3] *Poole v Board of Canvassers of Wayne County,* 88 Mich App 299, 304; 276 NW2d 587 (1979).

[4] MCL 500.3135(2); MSA 24.13135(2).

Plaintiffs' well-prepared brief states several hypothetical examples of how the trial court's interpretation of § 3135(2), when applied in other situations, would undercut the Legislature's intention when it abolished tort liability:

"A person rents a trailer for his car from an automobile equipment rental company. The company installs a trailer hitch and hooks up the trailer, both done negligently. As the motorist drives on a street the trailer comes loose and damages the auto. In a second hypothetical situation a construction company excavates and throws dirt into a pile on a road. No warning devices are left. Negligence of the construction company is clear. In the night a motorist hits the pile of dirt. A third hypothetical could be the classic situation of a motorist being hit by a train at a dangerous and unmarked crossing."

Although plaintiff's argument is well articulated, to effectuate the no-fault scheme, there can be no hearing to determine fault, even in the above situations where there is only damage to tangible property.[5]

No-fault was enacted in order to provide a method of prompt compensation for persons and property involved in automobile accidents. If the Legislature had intended to limit § 3135(2) to the defendant's use of a motor vehicle, it could have achieved this purpose by abolishing "tort liability arising from the *defendant's* ownership". Or, the statute could have abolished "tort liability *caused by* the ownership of a motor vehicle". The use of the broad term "arising from" indicates that the Legislature did not intend to limit § 3135(2) to

---

[5] Although we recognize that this defendant suffers a windfall by not having to pay for damage to plaintiff's automobile, the legislative plan recognized that in most instances where a collision occurs between a vehicle and property, most often the vehicle will cause the damage.

accidents caused by a defendant's use of a motor vehicle.

The trial judge's conclusion that § 3135(2) applies to actions arising out of a plaintiff's use of a motor vehicle is correct. Plaintiffs' claims are barred by the no-fault act.

Affirmed.

ALLEN, P.J., concurred.

BASHARA, J. *(dissenting).* I would dissent. The majority concludes that under no-fault, the Legislature intended tort liability to be precluded whenever an automobile is involved, even if the cause of the accident could in no way be attributed to the vehicle.

In my view, the statute does not speak to the probability that an owner or operator of a vehicle may be injured by a nonvehicular cause. It speaks only of liability. Indeed, the Commission's comment to § 5 of the Uniform Motor Vehicle Accident Reparations Act, from which our no-fault legislation is patterned, states the following:

"Moreover, the only tort actions which are abolished are those which arise from the *defendant's* ownership, maintenance, or use of a motor vehicle. Among the potential tort actions thus retained by an automobile accident victim would be those against an automobile manufacturer for products liability or against a railroad in the case of an automobile-train collision." 1 Uniform Laws Annotated, Civil Procedural and Remedial Laws, § 3, Commissioner's Comment, p 372. (Emphasis supplied.)

The above comments clearly suggest that one whose negligence may have caused damage, but who may not have been involved in a collision, should not be absolved from liability. Moreover,

the majority's interpretation of the statute would create an anomalous situation. A victim who suffers permanent disfigurement or serious impairment of a bodily function may maintain a tort action where the injuries are caused by the ownership, use or maintenance of a motor vehicle. Conversely, an owner or operator suffering the same injuries may not maintain such an action, merely because the causation did not arise from the ownership, use or maintenance of another automobile.

It is my opinion that had the Legislature intended to exclude this class of tortfeasors, an express provision could easily have been added to the statute. Until that is accomplished, fairness alone should dictate that we not enlarge upon the ambit of "no-fault" legislation.

I would reverse the decision of the trial court.