DELIGHT, INC., Appellant,

v.

BALTIMORE COUNTY, Appellee.

No. 79–1564.

United States Court of Appeals, Fourth Circuit.

Argued May 7, 1980.

Decided June 9, 1980.

Nancy E. Paige, Baltimore, Md. (Lawrence S. Greenwald, Gordon, Feinblatt, Rothman, Hoffberger & Hollander, Baltimore, Md., on brief), for appellant.

Harry S. Shapiro, Chief Asst. County Sol. (Leonard S. Jacobson, County Sol., Towson, Md., Raymond F. Altman, Asst. County Sol., Towson, Md., on brief), for appellee.

Before WINTER, WIDENER and SPROUSE, Circuit Judges.

SPROUSE, Circuit Judge:

The plaintiff, Delight, Inc., appeals the judgment of the District Court for the District of Maryland, 475 F.Supp. 754, which held certain regulations and policies of Baltimore County, Maryland governing land developments not to deprive Delight of equal protection guaranteed by the Fourteenth Amendment of the United States Constitution.

Delight is a land developer, owning property in Baltimore County, Maryland known as Delight Meadows, Sections 2, 3 and 4. Delight was, prior to December 16, 1976, permitted to develop Sections 2, 3 and 4 to a density of one dwelling per acre. On December 16, 1976, Baltimore County's amendment of the zoning classification controlling the involved land went into effect, allowing only 0.3 dwellings per acre on all lots or parcels recorded subsequent to that time. Section 2 of Delight Meadows was recorded prior to December 16, 1976. Sections 3 and 4 were not. Delight contends that the zoning amendment deprived it of approximately two-thirds of the use of Sections 3 and 4 and argues that the County's regulations and policies which precluded Delight from recording the lots and parcels to those Sections prior to December 16 violate the equal protection clause of the Fourteenth Amendment.

The challenged regulations and policies, in requiring security for the development of subdivisions, draw distinctions between three categories of development. Category 1 includes subdivisions wherein the developer will construct only roads and storm drains but not facilities for public water and public sewers. These subdivisions are primarily in rural areas and frequently have wells and septic tanks. The developers of category 1 subdivisions must post security for the building of roads and storm drains before the department of public works will approve the plats for recording.

Categories 2 and 3 involve land serviced or to be serviced by public water and sewer. Developers who agree to be responsible for the payment of their share of the cost of providing public water and public sewers from existing facilities are in category 3. Baltimore County permits the recording of plats for developments in category 3 without a deposit of security but controls the proper development of this type land by refusing permits for water and sewer hookups until there is satisfactory proof of development.

Delight Meadows, Sections 2, 3 and 4 is a category 1 subdivision and thus Delight was required by Baltimore County's department of public works to post security before the plats could be approved for recording. Delight was unable to post the security for Sections 3 and 4 prior to the December 16, 1976 deadline and those sections became subject to the zoning classification amendment. Delight argues that because there is a difference in treatment of classes of developers on the basis of wealth, the county statutory distinction must be "strictly scrutinized," and so viewed, is violative of Delight's equal protection rights.

■ We do not agree. Since the classification does not interfere with a fundamental personal right nor involve an inherently suspect distinction such as race or religion, the standard for gauging a local economic regulation of this type is the "rational basis" test. The equal protection clause requires only that such a challenged classification be rationally related to a legitimate

state interest. *Friedman v. Rogers*, 440 U.S. 1, 99 S.Ct. 887, 59 L.Ed.2d 100 (1979); *New Orleans v. Dukes*, 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976).

■ We agree with the District Court that Baltimore County had a legitimate interest in shielding potential buyers from economic harm and in protecting itself from added expense in completing roads and storm drains in partially completed subdivisions. Clearly, the method used to achieve this interest was rational. As stated by the District Court in its opinion:

> Once a PWA is executed and a plat with regard to a classification 1 subdivision is recorded, the risks of harm from the developer's default may well become greater, since houses without roads and storm drains are legally habitable and thus more marketable if those houses have plumbing (i. e., septic tanks and wells) than if they do not have plumbing. Thus, in the case of classification 1 developments the last point of workable control may be prior to execution of the PWA and final subdivision plat approval, whereas a later control point may be feasible as to subdivisions requiring new water and sewer utilities or a plumbing "hook-up" since in those cases no plumbing permits can be issued before the utilities are available. Thus, the posting of the security can perhaps be safely delayed until the time for "hook-up" or awarding the utility contracts (a point never occurring in classification 1 subdivisions since the utilities are either already in or are not going in at all, i. e., wells and septic systems). Purchasers may well buy homes without paved streets but they may be much more skeptical about accepting a promise for running water "soon."

At trial, the County supported this reasoning by demonstrating that development defaults on the part of developers in category 1 had occurred in the past, while none had occurred on the part of developers in category 3.

■ It is true that there are a number of possible alternative ways in which the coun-

ty could have regulated subdivisions according to the difference in their locations and types. To successfully withstand an equal protection attack, however, it is not necessary that a local legislative body tailor its regulations with exactness or even choose the best alternative. As the Supreme Court said in *Hughes v. Alexandria Scrap Corp.*, 426 U.S. 794, 813, 96 S.Ct. 2488, 2499, 49 L.Ed.2d 220 (1976):

> It is well established, however, that a statutory classification impinging upon no fundamental interest, and especially one dealing only with economic matters, need not be drawn so as to fit with precision the legitimate purposes animating it. *Williamson v. Lee Optical Co.*, 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955). That Maryland might have furthered its underlying purpose more artfully, more directly, or more completely, does not warrant a conclusion that the method it chose is unconstitutional.

Accordingly, the decision of the District Court is affirmed.

*AFFIRMED.*