CHARLOTTE–MECKLENBURG INDEPENDENT AUTOMOBILE DEALERS ASSOCIATION, Plaintiffs,

v.

The UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and its Administrator; the Environmental Management Commission of the North Carolina Department of Natural Resources and Community Development and its Members; and the North Carolina Department of Transportation and its Secretary, Defendants.

No. C–C–82–669–M.

United States District Court, W.D. North Carolina, Charlotte Division.

Dec. 1, 1982.

George Daly, Charlotte, N.C., for plaintiffs.

Tom Moffitt, Asst. Atty. Gen. of North Carolina, Raleigh, N.C., for defendants.

## ORDER

McMILLAN, District Judge.

This suit was filed on November 8, 1982, and was heard on November 22, 1982, on the plaintiffs' motion for a preliminary injunction restraining the defendants from implementing in Mecklenburg County, North Carolina, a long-heralded program of inspection of automobiles for excess emission of carbon monoxide and other pollutants. The program goes into effect today, December 1, 1982.

A substantial amount of testimony was received at the hearing, and able arguments were made by counsel for the plaintiffs and for federal and state defendants. Decision was held in abeyance until November 29, 1982, the Monday after Thanksgiving, so that the parties might try to arrive at an adjustment of their differences, and perhaps a postponement of the selective implementation of the program in Mecklenburg County. Counsel for the United States advised the court just before closing time on November 29, 1982, that the Environmental Protection Agency had "no discretion" to consider postponement of the program and that no negotiations had been undertaken. I do not agree that the Administrator has no discretion; the significance of his message is that there has been no effort to reach a compromise.

Since no party contends that the Environmental Protection Agency has made a clear-cut appealable final order, and no one contends that the suit should have been filed in the Court of Appeals, I will, therefore, proceed to decide the preliminary injunction question.

## BACKGROUND

The Clean Air Act, 42 U.S.C. Section 7401 *et seq.*, authorizes the Administrator of the Environmental Protection Agency to promulgate standards for certain air pollutants, including carbon monoxide. The carbon monoxide standard is listed in 40 C.F.R. Section 50.8 (1981). Under the Act, each state is required to submit for approval by the Administrator a "state implementation plan" for the implementation, maintenance, and enforcement of the national air quality standards. 42 U.S.C. Section 7410(a)(1). Under the 1977 amendments to the Act, the deadline for attainment by the states of the pollution control standards was extended from 1975 until December 31, 1982.

Congress created an exception to this rule in the case of photochemical oxidants (ozone) and carbon monoxide. With respect to these pollutants, Congress allowed a state, if it could demonstrate to the Administrator that it was impossible to comply with the national standards by the end of 1982, to obtain a further extension of up to five years. Section 7502(a)(2). However, there are strings attached. For any "non-attainment area," as defined in Section 7501(2), the state must, among other things, "establish a specific schedule for implementation of a vehicle emission control inspection and maintenance program (I/M Program)." Section 7502(b)(11)(B).

On March 3, 1978, after testing the atmosphere in numerous locations, the Environmental Protection Agency designated Mecklenburg County a "non-attainment" area for the carbon monoxide standard. 43 Fed.Reg. 8962, 9020. The Administrator subsequently determined that the revised

North Carolina state implementation plan did not adequately provide for the attainment of the permissible carbon monoxide levels in Mecklenburg County by December 31, 1982, as required by Section 7502. *See* 45 Fed.Reg. 26038 (April 17, 1980). North Carolina therefore sought and obtained an extension of its carbon monoxide compliance deadline for Mecklenburg County, conditioned upon the implementation of an I/M Program for the county. (The EPA has decided not to require I/M Programs for urban areas in North Carolina with populations less than 200,000. Although serious violations of the carbon monoxide standard have been recorded in Wake County, which has a population greater than 200,000, it has not been designated a "nonattainment area," and therefore the state has not been required to implement an I/M Program there.)

North Carolina eventually devised a detailed schedule for the implementation of an I/M Program for Mecklenburg County which was approved by the Environmental Protection Agency on March 19, 1981. 46 Fed.Reg. 17556. The EPA says that it has never approved the specific regulations of the program; that is no doubt technically correct, but for the purposes of deciding this motion the court finds that EPA has tacitly or constructively, at least, "approved the program." The program says that "all gasoline-powered motor vehicles which are registered and/or based in Mecklenburg County which are no older than thirteen (13) model years ... are required to have an exhaust emission test," N.C.D.O.T., *Safety/Emission Inspection Regulations for Mecklenburg County (Effective December 1, 1982)*, p. 24. It is this program which plaintiffs now challenge.

## LOCAL HISTORY

Plaintiffs, used car dealers of Charlotte and Mecklenburg County, attack the regulations as applied; they object to the program because they say it will require them to inspect and repair used cars at great expense and will cause them to charge more for their cars and lose sales to dealers in other counties who are not subject to the same requirement. They say that the selective application of this program to Mecklenburg County only is arbitrary and capricious and a violation of their rights to equal protection of laws and due process of law, and that it is an unjust economic burden upon them.

The plaintiffs also say that the inspection program in Mecklenburg is unnecessary because air quality as measured in Mecklenburg County has been steadily and consecutively improving for the last several years and that Mecklenburg County will be in compliance in the immediate future; that the inspection program is a useless expense and will severely damage their businesses.

Defendants say that only Mecklenburg has been found to have unlawfully foul air; that all automobiles (not just those bought and sold by defendants) must be brought into compliance; that the hardship on plaintiffs is relatively minor; that the public health and interest require that the program proceed; and that the persons hurt if the program is halted include the mechanics and garages who may have already installed the equipment needed to carry out the inspection program.

There is much merit in the position of the plaintiffs. If I were the director of the federal or the state agency, I would think a long time before imposing such a selective requirement on persons like the plaintiffs, who handle a small fraction only of the automobiles whose exhaust systems provide the daily supply of ozone and carbon monoxide for the nostrils of Mecklenburg dwellers.

However, I am not the Administrator; I do not know the program and the problem as well as they and their staff (though I question strongly their insistence that after five years of improvement, all of a sudden the Mecklenburg area is going to get worse). I do not have the technical capacity that they are supposed to have to make such determinations.

Moreover, it takes conduct far more arbitrary than this to invalidate public welfare legislation under the due process clause.

"It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it." *Williamson v. Lee Optical Co.,* 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955). Congress could have rationally concluded that carbon monoxide pollution poses so great a danger to the public health and welfare that vehicle emission control programs should be required *immediately throughout the country.* But Congress chose to paint with a finer brush; they delegated to an administrative agency the responsibility of working out the details of vehicle emission control programs, such as where they should be required and when. The fact that they did so does not make the present program any more vulnerable to due process challenge.

Nor do plaintiffs, whose losses are essentially economic, fare any better under the equal protection clause. *New Orleans v. Dukes,* 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976); *Williamson v. Lee Optical Co., supra.* A few months before the nuclear reactor at Three Mile Island sprang a leak, the Supreme Court in its wisdom upheld the Price-Anderson Act, which limited to about ½ billion dollars the liability of handlers of nuclear materials for damage caused to innocent third parties by nuclear accidents. *Carolina Environmental Study Group v. United States Atomic Energy Commission,* 431 F.Supp. 203 (W.D.N.C. 1977), 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978). What the Supreme Court would have done with that case if Three Mile Island had happened before instead of after their decision no one knows, but if the Price-Anderson Act was constitutional, plaintiffs may not successfully contend that the selective application of the clean air program in Mecklenburg County is invalid.

Plaintiffs have demonstrated that putting the program into effect today will hurt them more than it will hurt the defendants or others on whose behalf evidence was offered. However, they have not shown probable likelihood of ultimately prevailing on the merits; the harm they will suffer is not irreparable; and the public interest in clean air will be served better by going ahead with the program. Plaintiffs do not satisfy the test in this circuit for getting a preliminary injunction. *Blackwelder v. Selig,* 550 F.2d 189, 196 (4th Cir.1977).

Therefore, with considerable reluctance, but in the belief that, as I said at the hearing, defendants have bad equity but good law on their side, I will deny the preliminary injunction.

IT IS SO ORDERED, this 1st day of December, 1982.