The Honorable Mark Riable, Chair Board of Trustees Arkansas Schools for the Blind and Deaf P.O. Box 3811 Little Rock, AR 72203
Dear Chairman Riable:
I am writing in response to your request for my opinion on the constitutionality of Senate Bills 782 and 783. Senate Bill 782 proposes to create a "combined board of trustees" for the Arkansas School for the Blind and the Arkansas Institution for Advocacy for the Blind. The bill also proposes to consolidate the two organizations into a newly created Arkansas School for the Visually Impaired. Senate Bill 783 proposes to create a "combined board of trustees" for the Arkansas School for the Deaf and the Arkansas Institution for Advocacy for the Deaf. This bill similarly proposes to consolidate the two organizations into a newly created Arkansas School for the Hearing Impaired. Each bill calls for a complete transfer of power from the old board to the new and sets the number of new board members at seven.
RESPONSE
In my opinion, although the reorganization and consolidation called for in the proposed bills do not facially violate Ark. Const. amend. 33, the bills may nevertheless be constitutionally suspect. A fact question exists as to whether the Institution for Advocacy for the Blind and the Institution for Advocacy for the Deaf, notwithstanding their names, qualify as "institutions" subject to the provisions of amendment 33. If not, I believe the reorganization and consolidation would be prohibited. Moreover, I believe the provision for mandatory attendance of the School for the Blind or the School for the Deaf by "normal" handicapped students residing in school districts whose schools do not accommodate the handicapped might be deemed to violate Ark. Const. art 14, § 1 or the equal protection clause of U.S. Const. amend. 14. Determining whether a violation exists would entail conducting a factual inquiry I am unauthorized to undertake.
Both bills reference as authority for the consolidation Ark. Const. amend. 33, which provides in pertinent part:
 § 1. Term of office of members. The term of office of members of the boards or commissions charged with the management or control of all charitable, penal or correctional institutions and institutions of higher learning of the State of Arkansas, now in existence or hereafter created, shall be five years when the membership is five in number, seven years when the membership is seven in number, and ten years when the membership is ten in number. . . .
 § 2. Abolition or transfer of powers of board or commission — Restrictions. The board or commission of any institution, governed by this amendment, shall not be abolished nor shall the powers vested in any such board or commission be transferred, unless the institution is abolished or consolidated with some other State institution. In the event of abolition or consolidation, the new board or commission shall consist of a membership of five, seven, or ten.
 § 3. Increase or decrease of members of board or commission prohibited. The membership of any such board or commission now in existence shall not be increased or decreased in number after the effective date of this amendment nor shall the number of members of any such board or commission created after this amendment is in operation be increased or decreased subsequent to its creation.
As I discussed in Ark. Op. Att'y Gen. No. 2000-007, the history of amendment 33 suggests that the people adopted these restrictions to preclude executive and legislative intrusion into the affairs of existing boards.
As reflected in the phrase "some other State institution," this constitutional provision exclusively addresses the abolition or consolidation of state boards or commissions. All four of the currently existing entities referenced in the bills are established by statute as state charitable or educational institutions subject to the conditions of amendment 33. See A.C.A. § 6-43-101 et seq. (establishing and defining the operations of the School for the Deaf and the School for the Blind); Ark. Op. Att'y Gen. No. 97-153 (opining that the School for the Deaf and the School for the Blind are "charitable institutions" governed by Amendment 33); A.C.A. § 6-61-118 (creating the Arkansas Institution for Advocacy for the Deaf as "an institution of learning to train individuals to become advocates for the deaf and to provide the information to the public concerning the needs and rights of deaf citizens"); A.C.A. §6-61-115 (creating the Arkansas Institution for Advocacy for the Blind to perform the same service for the blind).
The School for the Blind and the School for the Deaf are currently governed by a single board of five trustees. A.C.A. §§ 6-43-101, 25-17-201
and 25-17-205. In Ark. Op. Att'y Gen. No. 97-089, my immediate predecessor opined that it would be impermissible under amendment 33 for the General Assembly to increase the membership of this board from five to seven. I fully agree with my predecessor's opinion. However, unlike the proposed change at issue in Opinion No. 97-089, the changes contemplated in the proposed legislation you have attached to your request do not facially offend amendment 33. The legislation clearly provides for the consolidation, on the one hand, of the Arkansas School for the Deaf and the Arkansas Institution for Advocacy for the Deaf and, on the other, of the Arkansas School for the Blind and the Arkansas Institution for Advocacy for the Blind. Under the express provisions of amendment 33, § 2, such consolidations are permissible and the legislature is empowered to set the membership of the board at five, seven, or ten, so long as the consolidated entities qualify as "institutions" subject to the amendment. See Ark. Op. Att'y Gen. No.96-376 (opining that amendment 33 would not preclude merging the Board of Correction and the Arkansas Adult Probation Commission to form the Board of Correction and Community Punishment); Ark. Op. Att'y Gen. No. 95-068
(opining that amendment 33 would not preclude consolidating the State Hospital and the institutions governed by the Youth Services Board).
Notwithstanding their legislative designation as "institutions," in my opinion a fact question exists regarding whether the Arkansas Institution for Advocacy for the Deaf and the Arkansas Institution for Advocacy for the Blind qualify as "institutions" for purposes of enforcing amendment 33. As my predecessor noted in the attached Ark. Op. Att'y Gen. No.96-376:
 Although Amendment 33 does not define "other State institution," the Arkansas Supreme Court has concluded that "institutions," as used in Act 317 of 1937 (now codified as A.C.A. § 22-6-601 (Supp. 1995)), means "such State agencies as the State Hospital, the State Penitentiary, the State Tuberculosis Sanatorium, the McRae Tuberculosis Hospital, and other agencies of a similar nature, having charge of buildings and properties for carrying out the purposes for which the State operates such institutions.". . . Harris v. Emmerling, 224 Ark. 40, 271 S.W.2d 618 (1954). To some degree, the question of whether an entity is a "state institution" is also a question of fact.
In Emmerling, the court elaborated as follows:
 The Resources and Development Commission does not have supervision of the affairs of institutions of the State. The Act creating the Resources and Development Commission is Act 138 of 1945, and may be found in 9-101 et seq. Ark. Stats. The Commission is inter alia to bring labor, industry and agriculture into accord for developing Arkansas, to publicize Arkansas' great industrial operations, to stimulate travel into Arkansas, to promote the further use of navigation and hydro-electric power, to co-operate with civic organizations devoted to the welfare and development of the State, and to recommend to the Governor the means and methods for a more efficient operation of the State Government. Among other powers and duties of the Commission, it is also authorized to ". . . make a study of the institutions supported in whole or in part by this State . . ." It is clear that the Resources and Development Commission does not have supervision of any State institution, and therefore does not come within the purview of the said Act 317 of 1937. The power to dispose of the property here involved is not vested in the Resources and Development Commission by the Act 317. The power to dispose of the property here involved is now vested in the Legislature.
224 Ark. at 44, 6-61-117.
The sole substantive power set forth for the boards of both advocacy institutions is to "[e]nter into cooperative ventures with one (1) or more institutions of higher education for the provision of facilities, equipment, and staff necessary for the institution." A.C.A. §§ 6-61-117(1) and 6-61-120(1). Purely as a matter of logic, it would not appear that this limited mandate to work with "institutions of higher education" in itself renders the Institution for Advocacy for the Deaf and the Institution for Advocacy for the Blind themselves "institutions" in the constitutional sense. The mere fact that the legislature has chosen to designate these entities as "institutions" does not automatically render them such for purposes of constitutional analysis. See Ark. Op. Att'y Gen. No. 97-027 ("The legislature is without power, in my opinion, to dictate to the judicial branch the meaning of a term used in our constitution. . . ."). However, determining the status of either entity must ultimately turn on a factual inquiry this office is not authorized to conduct. I can only opine that the proposed legislation with respect to either entity should be found unconstitutional if the board of that entity does not have supervision over a "state institution" as discussed in Emmerling.
I do have some concern that one provision of the proposed legislation at least potentially conflicts with Ark. Const. art. 14, § 1, which provides that "the State shall ever maintain a general, suitable and efficient system of free public schools and shall adopt all suitable means to secure to the people the advantages and opportunities of education." In accordance with common sense, the state has interpreted this mandate to mean that the free public schools must generally be available in appropriately sized districts to serve resident students.[1] A.C.A. §6-18-202(b)(1). Complementing this policy, the state has embraced the concept of "mainstreaming" the disabled whenever possible. Subsection6-41-202(a) of the Code provides:
 It shall be the policy of this state to provide and to require school districts to provide, as an integral part of the public schools, a free appropriate public education for students with disabilities. The State Board of Education is therefore expressly authorized to assign responsibility for providing free appropriate public education of any child with a disability to an appropriate school district.
(Emphasis added.) Subsection 6-41-204(a)(1) of the Code similarly provides: "To the maximum extent practicable, children with disabilities shall be educated along with children who do not have disabilities and shall attend regular classes." Section 6-41-401 of the Code further provides as follows:
 The General Assembly finds that proficiency in braille reading and writing is essential for the satisfactory educational progress of visually impaired students and that braille instruction must be used in combination with other special education services that are appropriate to the educational needs of visually impaired students; therefore, it is hereby declared to be the policy of this state to provide, and to require school districts to provide, all visually impaired students who are enrolled in Arkansas public schools and whose education is adversely affected by their visual disability with an equal opportunity for appropriate instruction. Appropriate instruction shall be designed to enable each visually impaired student to communicate with the same level of proficiency as other students of comparable ability at the same grade level.
(Emphasis added.) Moreover, mainstreaming the disabled whenever possible is a condition precedent to receiving the practically indispensable federal funds for education under the Individuals With Disabilities Education Act (IDEA) (formerly the Education for Handicapped Act),20 U.S.C. § 1400 et seq. As the Eighth Circuit Court of Appeals noted inGill v. Columbia 93 School District, 217 F.3d 1027, 1034 (8th Cir. 2000):
 IDEA requires states to provide a disabled student with a free appropriate public education. See Yankton Sch. Dist. v. Schramm, 93 F.3d 1369, 1373 (8th Cir. 1996). Section 504 of the Rehabilitation Act requires the same. 29 U.S.C. § 794(a), 34 C.F.R. § 104.33. One of the Congressional policies behind IDEA is to enable disabled children to be educated alongside their non-disabled peers rather than to be shut off from them, 20 U.S.C. § 1400, and disabled students are to be educated in a mainstream classroom whenever possible. Board of Educ. v. Rowley, 458 U.S. 176, 202 (1982); Fort Zumwalt Sch. Dist. v. Clynes, 119 F.3d 607, 612 (8th Cir. 1997). A specialized course of instruction must be developed for each disabled student, taking into account that child's capabilities. 20 U.S.C. § 1414(d)(1)(A).
I am concerned that these policy objectives might at least potentially conflict with Section 15(a) of both S.B. 782 and S.B. 783, captioned "Attendance — Enforcement," which provides:
 Every parent, guardian, or other person having control of any mentally normal child over eight (8) years of age and under nineteen (19) years of age who is visually [hearing] impaired to the extent that the child cannot be benefited by instruction in the public schools shall be required to send the child to the Arkansas School for the Blind [Hearing Impaired] at Little Rock.[2]
The suggestion that a "normal child" who is visually or hearing impaired could not benefit by instruction in the public schools implies that school districts have a degree of discretion in accommodating the handicapped that seems inconsistent with the above recited mandates that the handicapped be mainstreamed if possible. I am frankly troubled by the proposition that if a school district simply avoids accommodating an otherwise "normal" handicapped child in lieu of providing accommodations that the legislature apparently considers feasible, the result will be that the child is separated from his parents and placed into custodial care. In terms of Ark. Const. art. 14, § 1, I question whether providing public education on such terms is "suitable."
Having stated these concerns, I should point out that the applicability of Ark. Const. art. 14, § 1 to blind, and most likely to deaf, students is in doubt. In the hoary case of Walls v. State Board of Education,195 Ark. 955, 961-62, 116 S.W.2d 354 (1938), the Supreme Court offered the following in support of the conclusion that the permanent school fund could not be invaded to finance improvements to the School for the Blind:
 It is argued that the school for the blind is a part of the public school system. If this theory were correct, we do not think the conclusion necessarily follows that there is a right to so use the permanent school fund. This fund was levied and collected to form active capital for the production of additional revenue by investment in income producing securities. It would be using the funds for purposes never intended in the collection and accumulation thereof to convert them into a building fund for the erection of a nonincome producing structure subject to obsolescence and decay. Even if it be a loan, as argued, there is no security for a part thereof, except the unacknowledged obligation of some future legislature to restore the fund.
 We do not think the above-quoted statutes were repealed or even modified by act 239 aforesaid, nor do we think the Blind School is a component part of the common or public school system of the state. Different provisions of our organic law relate to education generally, and to the care and education of blind children particularly.
 Section 1, Art. 14, of the state constitution provides that the state shall maintain a public school system. Section 19 of Art. 19 provides that the legislature shall make suitable provisions for the support of institutions for education of the blind.[3]
 Obviously, on account of their affliction, blind children cannot be educated with those who are not blind, nor by the same methods. In order that they may be self-respecting and, in the future, self-supporting, it would seem that the blind children should be the object of the state's more generous care than those who are not so afflicted, but even the state's generosity to its wards will not warrant the unjust deprivation of acknowledged rights belonging to another class. Citizens or property owners who by their contributions and taxes paid build such funds as the permanent school fund are properly active in defending such funds against invasion. Generous impulses, however commendable, may not serve to palliate erroneous action.
 Throughout all the years the Blind School, as an entity separated from the common school system, has been supported and maintained by the state, and so far as we are advised by citations, or otherwise, in the briefs presented to us, there does not seem to have ever been a time when the Blind School had a call upon the public school funds for support or maintenance. If there was ever a time when it was intended that the Blind School should be deemed a part of the public school system that fact has not been evinced by any suitable or appropriate legislation.
I believe that all but the final three sentences of the first paragraph of this rather archaic passage is dictum. The substantive ruling inWalls is that the proposed use of the funds was impermissible because "[t]his fund was levied and collected to form active capital for the production of additional revenue by investment in income producing securities." Id. at 196. The court's speculation that the blind and the sighted must be educated apart in no way bears on the court's ruling and strongly conflicts with the current legislature's commitment to the mainstreaming of the handicapped. At most, it seems to me, the quoted passage stands for the proposition that the School for the Blind — and, by implication, the School for the Deaf — have a constitutional funding imprimatur apart from the public schools. If faced with the issue, I doubt the Supreme Court would conclude that the mere existence of the School for the Deaf and the School for the Blind pursuant to Ark. Const. art. 19, § 19 renders the conditions of Ark. Const. art. 14, § 1
inapplicable to those who elect to enroll their deaf or blind children in public schools.
Finally, I believe Section 15 of each bill might be challenged on several grounds under the equal protection clause of the fourteenth amendment to the United States Constitution, which prohibits the state from subjecting various groups of people to differing treatment without adequate cause. In the very recent case of Board of Trustees of the University of Alabamav. Garrett, ___ U.S. ___, 121 S.Ct. 955, 2001 WL 173556, * 9 (February 21, 2001), the U.S. Supreme Court declared that "States are not required by the Fourteenth Amendment to make special accommodations for the disabled, so long as their actions towards such individuals are rational." The Court further explained:
 Under rational-basis review, where a group possesses "distinguishing characteristics relevant to interests the State has the authority to implement," a State's decision to act on the basis of those differences does not give rise to a constitutional violation. Id. [Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432 (1985)], at 441, 105 S.Ct. 3249. "Such a classification cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." Heller v. Doe, 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993) (citing Nordlinger v. Hahn, 505 U.S. 1, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992); New Orleans v. Dukes, 427 U.S. 297, 303, 96 S.Ct. 2513, 49 L.Ed.2d 511
(1976) (per curiam)). Moreover, the State need not articulate its reasoning at the moment a particular decision is made. Rather, the burden is upon the challenging party to negative "`any reasonably conceivable state of facts that could provide a rational basis for the classification.'" Heller, supra, at 320, 113 S.Ct. 2637 (quoting FCC v. Beach Communications, Inc., 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993)).
Id. at WL 173556, *8.
One possible question is whether there is any rational basis for accommodating "normal" blind and deaf students in certain districts, thus enabling them to attend a local public school, while failing to do so in others, triggering their removal from their homes for education at a residential facility in Little Rock. Another question is whether there is any rational basis for dictating that only "normal" blind and deaf students from non-accommodating districts will be sent to the Little Rock facilities. A third question is whether there is any rational basis for imposing the requirement of institutionalized education only between the ages of eight and nineteen, while the statutory period of compulsory education for unhandicapped children is from age five to seventeen.[4]
A.C.A. § 6-18-201(a). A fourth question arises from the requirement set forth in Section 15(b), that a child "shall continue to attend the schools [sic] for a term of at least thirty-two (32) weeks each year until the child has completed the course of instruction prescribed."[5]
This term does not appear to accord with the term for unhandicapped students set forth at A.C.A. §§ 6-10-106 and 6-10-108, raising the question of whether there is any rational basis for this discrepancy. Answering these questions would entail undertaking a factual inquiry of the sort I am neither authorized nor equipped to conduct.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP/JHD:cyh
Enclosure
[1] Section 6-18-206 provides that a student may elect to apply for admission to a school outside the district so long as his enrollment there would not "adversely affect the desegregation of either district."
[2] Section 15(a) closely resembles current A.C.A. § 6-43-105(a), which provides:
 Every parent, guardian, or other person having control of any mentally normal minor over eight (8) years of age who is defective in hearing or sight to the extent that he cannot be benefited by instruction in the public schools shall be required to send such minor to the Arkansas Schools for the Deaf and for the Blind at Little Rock, Arkansas.
[3] Section 19 of article 19 provides: "It shall be the duty of the General Assembly to provide by law for the support of institutions for the education of the deaf and dumb and the blind, and also for the treatment of the insane."
[4] Cf. A.C.A. § 6-18-202(b)(1) (providing that public schools "shall be open and free through completion of the secondary program to all persons in this state between the ages of five (5) and twenty-one (21) years. . . .")
[5] This provision mirrors current A.C.A. § 6-43-105(b).