Dear Representative Guillory:
Reference is made to your recent request for an opinion of this office, on behalf of the Fraternal Order of Police Lodge #8 of Lake Charles, regarding the health insurance coverage offered by the Lake Charles Harbor and Terminal District (the "District") to its retirees.
It is our understanding that the District recently merged its health and hospitalization insurance program with the insurance program provided by the Calcasieu Parish Police Jury, in an effort to decrease costs and partially offset operational and net losses the District has experienced. In conjunction with the merger, the portion of premiums paid by District employees and retirees, for themselves and their dependents, will gradually be increased until District employees and retirees are paying the same premium amounts as are paid by Parish employees.
Prior to the merger, the District paid the entire cost of premiums for its employees, retirees and their dependents. After the merger, with regard to both retiree and dependent premium costs, employee/retirees will initially be required to pay 20% of the premium. The percentage paid by employees and retirees will gradually increase over five years until the full cost of coverage for retiree and dependent coverage is born entirely by the employee or retiree. After five years, the cost of all premiums paid by District employees and retirees who choose to acquire health coverage through the District will be the same as the premium costs paid by Calcasieu Parish employees and retirees.
Understandably, a number of District retirees are unhappy about the increased cost of health coverage the merger of the District's health plan into the Parish plan will bring about. Specifically, you seek our opinion as to the legality under state law of the District's requiring its retirees to begin contributing to the cost of their health coverage, and ultimately to bear their entire health insurance cost, if those retirees choose to continue coverage under the District's health insurance plan.
The District is a political subdivision of the state in accordance with LSA-R.S. 34:201 and pursuant to La. Const Art. VI, Sec. 43and 44(2). Attorney General's Opinion No. 03-0403. Pursuant toLSA-R.S. 33:5151 political subdivisions are authorized to make contracts "insuring their employees and officials under policies of group insurance covering hospitalization, and retirement, for such employees and officials".
Attorney General's Opinion No. 97-234, previously issued by this office, addressed the issue of whether it was legal for the East Jefferson Levee District to pay 100% of health insurance premiums for its active employees and only 50% of the premiums for its retirees. Therein, we stated:
 "we do not find in [LSA-R.S. 33:5151] that `employee' is defined to include `retiree' so as to be placed in the same class as active employees .it does not appear that this office has ever concluded the premium payments contributed for the active employees in a political subdivision and its retirees must be the same, and we do not find any provision of law that would require these groups be treated the same. There cannot be discrimination between individuals in the same class, but different classes do not have to be treated equally [LSA-R.S.33:5151] does not statutorily define retiree as an employee so as to place them in the same class to require equal treatment.
 Therefore, we find the East Jefferson Levee District may pay 100% of the insurance premiums for its active employees and only 50% of the insurance premiums for its retired employees."
Also pertinent is Attorney General's Opinion No. 98-456, which addressed the issue of whether the Webster Parish School Board was required to pay the insurance premiums of all of its retired employees, and whether its failure to do so constituted unlawful discrimination. The School Board's position was that it had the discretion to decide to pay hospitalization insurance premiums only for retirees who had worked in the school system for five consecutive years prior to retirement and were enrolled in one of the systems hospitalization plans for at least three consecutive years prior to their retirement date. Therein, we determined:
 "the School Board's classifications do not involve a suspect classification such as race or religion. Nor do we find that there is a fundamental personal right to the payment of hospitalization premiums.
 If no suspect classification or fundamental right is involved, the issue is whether the classification created by the school board is rationally related to a legitimate state interest. Arguably the School Board's criteria is an economic regulation. When an economic regulation is challenged as violating the equal protection clause, courts may not sit as a super-legislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines. In the local economic sphere, it is only the invidious discrimination, the wholly arbitrary act, which cannot stand consistently with the Fourteenth Amendment. Lakeside Imports, Inc. v. State of Louisiana, 94-0191 (La. 7/5/94), 639 So.2d 253 (La. 1994); City of New Orleans v. Dukes, 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511
(1976); State ex rel. Guste v. K-Mart Corp., 462 So.2d 616
(La. 1985). It does not appear that the School Board is acting arbitrarily in limiting the retirees who receive hospitalization premiums and there appears to be a rational relationship between the classification of retirees and the legitimate state interest of allocating the proceeds of the tax among the various needs of the Webster Parish School System."
Based upon the foregoing, assuming no contract between the District and its retirees that would require otherwise, it is our opinion that the Lake Charles Harbor and Terminal District is not required to pay or contribute toward the health insurance premiums of its retirees the amount that it pays or contributes toward the premiums of its active employees. As such, the District can require retirees who choose to continue coverage under the District's health insurance plan to begin contributing to the cost of their health coverage, and ultimately to bear their entire health insurance cost.
We trust this sufficiently answers your inquiry. If we can be of further assistance, please do not hesitate to contact us.
Yours very truly,
CHARLES C. FOTI, JR.
Attorney General
BY: ________________________________
 JEANNE-MARIE ZERINGUE BARHAM Assistant Attorney General
CCF, Jr./JMZB/dam