OPINION OF THE COURT
Lester Evens, J.
Pursuant to CPLR 3212, plaintiffs (City) move for summary judgment, and defendant (Toby) cross-moves for similar relief. Plaintiffs seek to recover civil penalties in the sum of $2,100 for multiple violations of the Consumer Protection Law of 1969 (Administrative Code of City of New York, ch 64, tit A, § 2203d-1.0 et seq.) and Consumer Protection Law regulation 32 promulgated thereunder.
The record reveals the following facts. On two separate occasions — September 6 and September 10, 1979 —: an inspector for the New York City Department of Consumer Affairs visited Toby’s Electronics, Inc., located in the heart of New York City’s midtown hotel and tourist district at 565 Fifth Avenue (at 46th Street), and discovered that the *849 store was offering calculators to its customers at prices two to three times higher than the manufacturer’s suggested retail price. No disclosure of this fact could be found on the price tags attached to the items, as required by regulation 32. Of the three items reported by the inspector, one calculator that had a manufacturer’s suggested retail price for $100 was tagged with a price of $295, another with a list price of $75 was price tagged at $195, and a third listing for $45 was marked $99.95.
Toby admits that it offered these three items for sale at the above prices on the specified days and does not deny that it failed to disclose the manufacturer’s suggested retail price on the price tag along with the price at which it had chosen to sell the items. The city maintains that offering these three items for sale at these prices on two different occasions without disclosing the manufacturer’s suggested retail price constitutes six separate and distinct violations of regulation 32 and the Consumer Protection Law, which specifies a maximum penalty of $350 for each violation (Administrative Code, ch 64, tit A, § 2203d-4.0). The city thus requests judgment for $2,100, representing the maximum total penalty for the six violations.
Toby raises five affirmative defenses to the complaint. It argues that (1) the complaint fails to state a cause of action; (2) regulation 32 is unlawfully adopted in that it is outside the scope of activities proscribed and defined by the Consumer Protection Law as deceptive trade practices; (3) regulation 32, by tending to set maximum resale prices, is inconsistent with Federal enforcement of section 5 (subd [a], par [1]) of the Federal Trade Commission Act (US Code, tit 15, § 45, subd [a], par [1]); (4) regulation 32, by tending to set maximum resale prices, violates section 1 of the Sherman Antitrust Act (US Code, tit 15, § 1) and (5) regulation 32, by creating an arbitrary and capricious classification between goods that have a manufacturer’s suggested retail price and those that do not, violates the equal protection clause of the Fourteenth Amendment.
Although Toby does not dispute the essential facts upon which the City’s claim is based, it does raise legal issues regarding the constitutionality of regulation 32, the application of Federal law, and the validity of regulation 32 *850 itself. The afore-mentioned affirmative defenses are disposed of in the examination of these three issues.
I. CONSTITUTIONALITY
For economic legislation to be valid under the equal protection clause of the Fourteenth Amendment, the legislative choice of means must bear a rational relationship to the achievement of legitimate State interests. (New Orleans v Dukes, 427 US 297, 303.) Further, a legislative classification need not be logically consistent in every respect with the aims of the statute; it is sufficient that there is an evil at hand for correction and that the Legislature might have thought that the particular measure was a rational way to correct it. (New Orleans v Dukes, supra; Williamson v Lee Opt. Co., 348 US 483, 487-488.)
Section 2203d-1.0 of the Consumer Protection Law (Administrative Code, ch 64, tit A, § 2203d-1.0 et seq.) states: “No person shall engage in any deceptive or unconscionable trade practice * * * in the offering for sale *** of any consumer goods”.
The statute authorizes the Commissioner of Consumer Affairs to “adopt such rules and regulations as may be necessary to effectuate the purposes of this title, including regulations defining specific deceptive or unconscionable trade practices.” (Administrative Code, § 2203d-3.0.)
Regulation 32, promulgated by the Department of Consumer Affairs (City Record, March 30, 1973), deals with the deceptive pricing of merchandise in pertinent part as follows:
“32.1 It is a deceptive trade practice in the sale or offering for sale of consumer goods for a person (including any business entity) to sell any new product for any amount greater than the manufacturer’s suggested retail price, catalog price, list price, or any other retail price established or recommended by the manufacturer, supplier or distributor, if one exists, without also disclosing the manufacturer’s suggested retail price, catalog price, the list price, or any other retail price established or recommended by the manufacturer, supplier or distributor.
“32.2 Disclosures required by this Regulation shall be clearly and conspicuously printed on the price tag or label *851 of the item and in any advertisement which discloses the selling price of the item.”
Regulation 32 is designed to allow consumers to comparison shop in order to make informed buying decisions. (See commissioner’s explanation, City Record, March 30,1973.) It tries to accomplish this end by requiring retailers to disclose the manufacturer’s suggested retail price, a material fact necessary in making comparisons, where the retailer’s selling price exceeds the manufacturer’s suggested retail price.
The requirements set forth in regulation 32 operate equally on all retailers in this classification, irrespective of the fact that not all goods have a manufacturer’s suggested retail price. The requirement of disclosure whenever the selling price is greater than the manufacturer’s suggested retail price bears a rational relationship to the intended purpose of the Consumer Protection Law — to prohibit deceptive and unconscionable trade practices — and to the objective of regulation 32 — to provide consumers with the opportunity to comparison shop if they choose. Thus, regulation 32 does not violate the equal protection clause of the Fourteenth Amendment.
II. APPLICATION OF FEDERAL LAW
A. FEDERAL TRADE COMMISSION ACT
The Consumer Protection Law (Administrative Code, ch 64, tit A, § 2203d-1.0 et seq.) requires that rules and regulations adopted by the Commissioner of Consumer Affairs “may supplement but shall not be inconsistent with the rules, regulations and decisions of the Federal Trade Commission and the Federal courts in interpreting the provisions of Section 5(a) (1), or the Federal Trade Commission Act 15 U.S.C. 45(a) (1)” (Administrative Code, § 2203d-3.0; accord §2203d-7.0).
Section 5 (subd [a], par [1]) of the Federal Trade Commission Act (US Code, tit 15, §45, subd [a], par [1]), provides as follows: “Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful.” By outlining “unfair or deceptive acts or practices in or affecting commerce,” the Federal Trade Commission Act pro *852 tects consumers as well as merchants or manufacturers. (FTC v Colgate-Palmolive Co., 380 US 374, 384.)
The Federal Trade Commission Act does not define “unfair or deceptive acts or practices” or “unfair methods of competition”. As construed by the Federal courts, these terms are to be treated as general and flexible, taking their meanings from the facts of each case in light of particular conditions and substantial public interests. (See FTC v Colgate-Palmolive Co., supra, at p 385; Schechter Corp. v United States, 295 US 495, 532-533.)
In this regard, the Federal Trade Commission has stated, “We have no doubt that the use of unconscionable selling prices can, by itself, constitute an ‘unfair’ or ‘deceptive’ practice, or an ‘unfair method of competition’ in violation of Section 5 of the Federal Trade Commission Act.” (Matter of Tashof, 74 FTC 1361, 1406, enforced sub nom. Tashof v Federal Trade Comm., 437 F2d 707.)
Regulation 32 is fully consistent with the purpose and spirit of the Federal Trade Commission Act and with the Federal Trade Commission and Federal court decisions interpreting the act.
B. SHERMAN ANTITRUST ACT
Manufacturer’s suggested retail prices have long been regarded as lawful under the Sherman Antitrust Act (US Code, tit 15, § 1 et seq.), even if they have some indirect effect on prices. (United States v Colgate & Co., 250 US 300.)
In the exercise of its right to sell or refuse to sell to whom it pleases, a manufacturer engaged in an entirely private business may indicate the prices at which goods may be resold and may announce in advance that it will refuse to. sell to those who do not conform to these prices. (United States v Colgate & Co., supra, at p 307.)
Where, however, a manufacturer’s actions go beyond a mere announcement of its policy to maintain certain retail prices and a simple refusal to deal with the retailer who does not wish to sell at such suggested prices and the manufacturer employs other means that would coercively effect adherence to the resale price, it has put together a *853 combination that violates the Sherman Antitrust Act. (United States v Parke, Davis & Co., 362 US 29, 44.)
Toby contends that by issuing a manufacturer’s suggested retail price with the knowledge of the constraints of regulation 32, the manufacturers participated in a scheme to fix maximum prices in violation of the Sherman Antitrust Act. Toby has recited no facts, however, to support this allegation of conspiracy by the manufacturers to use regulation 32 to enforce its suggested retail prices. Further, there is no convincing evidence that either the individual electronics manufacturers or the City had used any coercive techniques to force Toby to adhere to the suggested retail prices.
Toby also contends that regulation 32 violates section 1 of the Sherman Antitrust Act because it effectively coerces retailers into selling at a price not higher than the manufacturer’s retail price, thus establishing a maximum resale price for goods with such a price.
Affixing a manufacturer’s suggested retail price on a product does not, in itself, constitute the acts of coercion contemplated under the Sherman Antitrust Act. (Bailey’s Bakery v Continental Baking Co., 235 F Supp 705, affd 401 F2d 182, cert den 393 US 1086.)[1]
In the absence of any coercive acts indicating actual restraint of trade, the requirements imposed by regulation 32 on the retailer are consistent with the normal market competitive pressures held to fall short of a Sherman Act violation in Bailey’s Bakery v Continental Baking Co. (235 F Supp 705, 722, supra), i.e., “the normal restraint arising from the public’s demand for a product and the correlative market demand upon competition that the ‘fixed price’ be met.” Regulation 32 does not place any limitation on the price at which merchants may sell their goods; it merely directs disclosure of a material fact where a retailer’s selling price exceeds the manufacturer’s suggested retail price.
Toby has failed to demonstrate that there are any illegal combinations or a conspiracy between the manufacturers *854 and the City or that there is any agreement to fix prices as a consequence of regulation 32.
III. VALIDITY ÓF REGULATION 32
Subdivision a of section 2203d-2.0 of the Consumer Protection Law (Administrative Code, ch 64, tit A, § 2203d-1.0 et seq.) defines deceptive trade practices in pertinent part as follows: “Deceptive trade practice. Any false, falsely disparaging, or misleading oral or written statement, visual description or other representation of any kind made * * * in connection with the offering for sale * * * of consumer goods *** which has the capacity, tendency or effect of deceiving or misleading consumers. Deceptive trade practices include but are not limited to: * * * (2) the use, in any oral or written representation, of exaggeration, innuendo or ambiguity as to a material fact or failure to state a material fact if such use deceives or tends to deceive” (emphasis added).
The failure to disclose the manufacturer’s suggested retail price when the selling price of a product exceeds that price falls within the statutory definition of a deceptive trade practice. Such activity represents a failure to state a material fact where such omission deceives or tends to deceive a potential consumer.
The Federal Trade Commission has stated that a manufacturer’s suggested retail price suggests to the buying public the price at which a product is usually and customarily sold by other stores in the same trade area.[2] (Giant Food v Federal Trade Comm., 322 F2d 977, 981-982, petition for cert dsmd 376 US 967.)
To a consumer who wishes to make an informed choice, disclosure that the selling price far exceeds the manufacturer’s suggested retail price is clearly material. Even Toby implicitly recognizes the materiality of the manufacturer’s suggested retail price to a consumer when the selling price is higher. On the other hand, Toby contends that its customers are both willing and happy to pay its prices because of the store’s convenient location and *855 knowledgeable sales staff. On the other hand, Toby argues that its customers will not pay more than list price in exchange for convenience and expertise.
When a fact is material to a buying decision and consumers would not ordinarily discover that fact before buying, it is deceptive not to disclose such a fact. (See, e.g., Waltham Watch Co. v Federal Trade Comm., 318 F2d 28, cert den 375 US 944.) Toby’s arguments suggest that its customers will gladly pay the higher price as long as they do not know that they can buy the same products much less expensively elsewhere — i.e., as long as they are unable to make informed choices.
The New York Court of Appeals, in interpreting the scope of the Consumer Protection Law, echoed the sentiment of earlier Federal court decisions relating to section 5 of the Federal Trade Commission Act (US Code, tit 15, § 45, subd [a], par [1]), saying, “In weighing a statement’s capacity, tendency or effect in deceiving or misleading customers, we do not look to the average customer but to the vast multitude which the statutes were enacted to safeguard — including the ignorant, the unthinking and the credulous who, in making purchases, do not stop to analyze but are governed by appearances and general impressions” (Guggenheimer v Ginzburg, 43 NY2d 268, 273).
The practices carried by Toby are precisely those that regulation 32 was intended to proscribe. The regulation allows a consumer to make an informed choice whether to pay a price higher than that available at other retail stores in the same trade area. The decision whether to pay a price higher than list in exchange for convenience and service must be made by the consumer, not unilaterally determined by the retailer and then thrust upon the uninformed and unsuspecting customer.
IV. CONCLUSION
The regulation of unfair trade practices, which have the potential to affect millions of people — tourists and unwary shoppers alike — is within the proper scope of the police power of the City. (Municipal Home Rule Law, § 10, subd 1, par [ii], cl a, subcl [12].) The protective measures pro *856 vided by regulation 32 are intended to give cústomers the opportunity to make reasoned and informed buying decisions, rather than leaving them at the mercy of unscrupulous retailers. These protections are fully consonant with the operation of a free and open market economy in which the unfettered forces of competition are supposed to work to the benefit of the public as a whole.
Although regulation 32 defines the failure to disclose the manufacturer’s suggested retail price, when the selling price is higher, as a deceptive trade practice, the practice it attempts to prohibit relates directly to unconscionable pricing. Subdivision b of section 2203d-2.0 of the Consumer Protection Law (Administrative Code, ch 64, tit A, § 2203d-1.0 et seq.) defines unconscionable trade practices in pertinent part as follows: “Unconscionable trade practice. Any act or practice *** in connection with the offering for sale *** of any consumer goods *** which unfairly takes advantage of the lack of knowledge, ability experience or capacity of a consumer; or results in a gross disparity between the value received by a consumer and the price paid, to the consumer’s detriment; provided that no act or practice shall be deemed unconscionable under this title unless declared unconscionable and described with reasonable particularity in a local law, or in a rule or regulation promulgated by the commissioner [of consumer affairs]. In promulgating such rules and regulations the commissioner shall consider among other factors: * * * (2) gross disparity between the price of goods * * * and their value measured by the price at which similar goods * * * are readily obtained by other consumers” (emphasis added). Therefore, the Commissioner of Consumer Affairs should comply with the statutory requirement in subdivision b of section 2203d-2.0 by amending regulation 32 to include a declaration that this practice is unconscionable. The commissioner should also urge the city council to amend subdivision a of section 2203d-2.0 to conform to the conclusion of the Federal Trade Commission, as expressed in Matter of Tashof (74 FTC 1361, 1406, supra), that the use of unconscionable selling prices constitutes an unfair or deceptive practice.
*857 Toby’s affirmative defenses do not stand up under close analysis. A full examination of the record reveals that the complaint states a cause of action and that there are no substantial issues of fact to be resolved in this case. Thus, the controversy is ripe for summary judgment under CPLR 3212.
Summary judgment is granted to the plaintiff.

. Overruled on other grounds in Kirihara v Bendix Corp. (306 F Supp 72).

. A trade area can be defined geographically as the area in which the retailer operates and to which the consumer can practicably turn to obtain the product. (Cf. Tampa Elec. Co. v Nashville Co., 365 US 320, 327 [relevant market as area in which seller operates and to which purchaser can practicably turn for supplies].)