835 F.2d 446
 1988 Copr.L.Dec. P 26,212, 5 U.S.P.Q.2d 1217
 ASOCIACION DE COMPOSITORES Y EDITORES DE MUSICA
LATINOAMERICANA, Petitioner,
v.
COPYRIGHT ROYALTY TRIBUNAL, Respondent,
American Society of Composers, Authors, and Publishers,
Broadcast Music, Inc., and SESAC, Inc., Intervenors.
 No. 1, Docket 86-4185.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 8, 1987.
Decided Dec. 16, 1987.
 
 Lawrence J. Bernard, Jr., Washington, D.C. (Ward & Mendelsohn, P.C., Washington, D.C., of counsel), for petitioner.
 Bruce G. Forest, Appellate Staff Atty., Civil Div., Dept. of Justice, Washington, D.C. (John F. Cordes, Appellate Staff Atty., Richard K. Willard, Asst. Atty. Gen., Washington, D.C., of counsel), for respondent Copyright Royalty Tribunal.
 I. Fred Koenigsberg, New York City (Bernard Korman, Bennett M. Lincoff [ASCAP]; Edward W. Chapin, Charles T. Duncan, Michael W. Faber, Lisa Holland Powell, Joseph J. DiMona [BMI]; Nicholas Arcomano [SESAC, Inc.], of counsel), for intervenors American Soc. of Composers, Authors and Publishers, Broadcast Music, Inc., and SESAC, Inc.
 Before PRATT, MAHONEY, Circuit Judges, and BRIGHT, Circuit Judge of the U.S. Court of Appeals for the Eighth Circuit, sitting by designation.
 PER CURIAM:
 
 
 1
 Petitioner, Asociacion de Compositores y Editores de Musica LatinoAmericana (ACEMLA), seeks review of the final determination of the Copyright Royalty Tribunal (CRT) distributing the juke box royalty fees collected in 1984. ACEMLA was one of five original claimants to the 1984 fees; the other four were American Society of Composers, Authors and Publishers (ASCAP), Broadcast Music, Inc. (BMI), SESAC, Inc., and the Italian Book Company. The Italian Book Company withdrew its claim, and ASCAP, BMI and SESAC, Inc. (the intervenors) reached an agreement on dividing the royalties among themselves as "performing rights societies".
 
 
 2
 ACEMLA, the petitioner in this review proceeding, argued before the CRT that it, too, was a "performing rights society" and was entitled to 10 percent of the 1984 fund under 17 U.S.C. Sec. 116(c)(4)(B) (1982). The intervenors together claimed entitlement to 100 percent of the fund; the key point in their argument was that ACEMLA lacked status as a "performing rights society".
 
 
 3
 Under the Copyright Act, the CRT first must consider and honor the claims of copyright owners who are "not affiliated with a performing right society"; then it must distribute the remainder of the fund among the performing rights societies. 17 U.S.C. Sec. 116(c)(4). In its final determination for the 1984 fund, the CRT found that ACEMLA was a copyright owner, but not a performing rights society. 51 Fed.Reg. 43,455 (Dec. 2, 1986). As an owner ACEMLA was held entitled to 0.06 percent of the fund; the remainder was ordered distributed to the intervenor performing rights societies in accordance with their agreement.
 
 
 4
 ACEMLA challenges the CRT's determination on three grounds: that the CRT failed to provide notice to ACEMLA of the standards to be used in determining performing rights society status; that the standards the CRT applied were arbitrary; and that the CRT's award of only 0.06 percent of the 1984 juke box royalty fees to ACEMLA was arbitrary. We will consider each challenge in turn.
 
 
 5
 ACEMLA's claim that it was denied due process of law because it lacked notice of the standards the CRT would apply in determining performing rights society status is without merit. ACEMLA was a claimant to the 1982 juke box royalty fees fund and appealed the 1982 CRT determination to this court. We remanded the case to the CRT for further proceedings, specifically noting that the question of whether ACEMLA qualified as a performing rights society had not been raised in the 1982 proceeding. ACEMLA v. Copyright Royalty Tribunal, 763 F.2d 101, 107 (2d Cir.1985). On remand, the CRT consolidated the 1982 and 1983 proceedings and found that ACEMLA was not a "performing rights society" as defined in the act which reads: "A 'performing rights society' is an association or corporation that licenses the public performance of nondramatic musical works on behalf of copyright owners, such as the American Society of Composers, Authors and Publishers, Broadcast Music, Inc., and SESAC, Inc." 17 U.S.C. Sec. 116(e)(3).
 
 
 6
 In its final determination of the consolidated 1982/83 proceedings, the CRT articulated three factors which led it to conclude that ACEMLA was not a performing rights society. 50 Fed.Reg. 47,577 (Nov. 19, 1985). First, ACEMLA was not an association or corporation, as used in the statutory definition of performing rights society. Second, ACEMLA had neither licensed any single users nor received any royalties. Finally, ACEMLA did not possess features similar to those performing rights societies listed as examples in the statute. Only two days after that determination spelling out the CRT's standards for ascertaining status as a performing rights society, the CRT entered an order noting that a controversy existed with respect to the 1984 fund--the one now in issue. At all times during the proceedings on the 1984 fund, therefore, ACEMLA was on notice of the standards the CRT was using to determine status as a performing rights society.
 
 
 7
 Further, we find no error in the CRT's application of those standards to ACEMLA in this proceeding for 1984. The CRT found that ACEMLA had no system for membership and affiliation and was not a corporation in its own right; it was only an assumed name for LAMCO, a music publishing company. On these facts, supported by substantial evidence in the record, the CRT concluded that ACEMLA did not meet the first standard, because ACEMLA was neither an association nor a corporation.
 
 
 8
 Although ACEMLA produced one contract which gave it the right to license performing rights, ACEMLA failed to show that it had actually licensed performing rights to anyone during 1984, and thereby failed to satisfy the CRT's second standard. In this connection, ACEMLA contends that the CRT erroneously excluded a licensing contract signed by ACEMLA in 1986 and offered in evidence after the deadline for ACEMLA's direct case. The CRT did not abuse its discretion in refusing to admit that contract. The CRT also found that in its operations ACEMLA still lacked the essential features of the performing rights societies identified in the statute. Thus, in applying these three standards to the 1984 proceeding, standards that are closely tied to the statute and that were originally articulated in its 1982/83 determination, the CRT concluded that ACEMLA was not a performing rights society as defined in Sec. 116(e)(3) of the Act. Its conclusion was not "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law", 5 U.S.C. Sec. 706(2)(A) (1982).
 
 
 9
 Finally, there is ample evidence to support the CRT's award of 0.06 percent of the 1984 jukebox royalty fees to ACEMLA. ACEMLA had a fair opportunity to present evidence proving its entitlement to a share of the fund, and the CRT considered not only the evidence presented by ACEMLA but also the challenges to that evidence raised by the intervenors. The figure it arrived at lies within the "zone of reasonableness" established by the evidence. See National Cable Television Association v. Copyright Royalty Tribunal, 724 F.2d 176, 190 (D.C.Cir.1983). Thus, the award of 0.06 percent was, on this record, neither arbitrary nor capricious and was supported by substantial evidence.
 
 
 10
 The petition is denied.