**ASOCIACION de COMPOSITORES y EDITORES de MUSICA LATINOAMERICANA and Italian Book Corporation, Petitioners,**

v.

**COPYRIGHT ROYALTY TRIBUNAL, Respondent.**

**American Society of Composers, Authors and Publishers; Broadcast Music, Inc; and SESAC, Inc., Intervenors.**

**No. 1114, Docket 88–4005.**

United States Court of Appeals, Second Circuit.

Argued May 31, 1988.

Decided June 23, 1988.

Lawrence J. Bernard, Jr., Washington, D.C. (Ward & Mendelsohn, P.C., of counsel), for petitioners.

I. Fred Koenigsberg, New York City (Bernard Korman, Bennett M. Lincoff, for American Soc. of Composers, Authors and Publishers, Edward W. Chapin, Nicholas Arcomano, for Broadcast Music, Inc., Charles T. Duncan, Michael W. Faber, Joseph J. DiMona, Reid & Priest, Washington, D.C., for Broadcast Music, Inc., John Koshel, Laurie Hughes, Steven R. Gordon, for SESAC, Inc., of counsel), for intervenors.

Christine R. Whittaker, Washington, D.C., Dept. of Justice, Appellate Staff, Civ. Div. (John R. Bolton, Asst. Atty. Gen., John

F. Cordes, Dept. of Justice, Appellate Staff, Civ. Div., of counsel), for respondent.

Before FEINBERG, Chief Judge, and LUMBARD and MINER, Circuit Judges.

FEINBERG, Chief Judge:

Asociacion de Compositores y Editores de Musica LatinoAmericana ("ACEMLA") and Italian Book Corporation ("IBC") petition for review of a final decision of the United States Copyright Royalty Tribunal ("Tribunal") distributing jukebox royalties for 1985. Specifically, petitioners argue that the Tribunal incorrectly ruled in 1985 that they were not "performing rights societies," as defined by 17 U.S.C. § 116. They also claim that even if they were not performing rights societies, the Tribunal's allocation to them was arbitrary, capricious, and unsupported by substantial evidence. For the reasons stated below, we deny the petition for review.

The statutory background to this case and the unique character of the Tribunal were set out at length in one of our previous cases involving substantially the same issues, *ACEMLA v. Copyright Royalty Tribunal*, 763 F.2d 101 (2d Cir.1985) (*ACEMLA I*). Briefly, under the Copyright Act, the Tribunal is directed to set a compulsory license fee that jukebox operators must pay each year to the Copyright Office. 17 U.S.C. § 801(b)(1). In 1985, the fee was $50 per jukebox, 37 C.F.R. § 306.3 (1987), and the royalty fund for the year totalled over $5.5 million. The Tribunal is required to distribute the fund annually in two stages. First, the Tribunal gives "to every copyright owner not affiliated with a performing rights society, the pro rata share of the fees to be distributed to which such copyright owner proves entitlement." 17 U.S.C. § 116(c)(4)(A). Second, the Tribunal distributes "the remainder of the fees" to "the performing rights societies ... in such pro rata shares as they shall by agreement stipulate among themselves, or, if they fail to agree, the pro rata share to which such performing rights societies prove entitlement." 17 U.S.C. § 116(c)(4)(B). Thus, if the performing rights societies agree on their respective shares, none of them need prove entitlement, but any claimant who is not a performing rights society must prove entitlement.

A "performing rights society" is "an association or corporation that licenses the public performance of nondramatic musical works on behalf of the copyright owners, such as the American Society of Composers, Authors and Publishers [ASCAP], Broadcast Music, Inc. [BMI], and SESAC, Inc." 17 U.S.C. § 116(e)(3).

In 1985, ACEMLA and IBC filed a joint claim for between 10 and 13% of the royalty fund. ASCAP, BMI and SESAC (who have intervened jointly in the petition to this court) were the only other claimants; they claimed 100% of the royalty and had stipulated as to the division of the award among themselves. As in previous years, ACEMLA (joined this year by IBC) argued before the Tribunal that it too was a performing rights society and should have its claim considered in the second stage of the Tribunal's proceeding. See *ACEMLA I*, 763 F.2d at 108; *Asociacion de Compositores y Editores de Musica LatinoAmericana v. Copyright Royalty Tribunal*, 809 F.2d 926, 928–29 (D.C.Cir.1987) (per curiam) (*ACEMLA II*) (1982/1983 royalties); *Asociacion de Compositores y Editores de Musica LatinoAmericana v. Copyright Royalty Tribunal*, 835 F.2d 446 (2d Cir. 1987) (per curiam) (*ACEMLA III*) (1984 royalties). As in the past, the Tribunal ruled that ACEMLA was not a performing rights society. The Tribunal also held that IBC was not a performing rights society. The Tribunal then considered petitioners' claims as copyright owners and awarded them 0.12% (about $6,000) of the total fees. Since under the Tribunal's ruling only ASCAP, BMI and SESAC were performing rights societies and since these three claimants had agreed to the division of their share, they received the remainder of about $5.5 million.

## I. Performing Rights Society Status

As noted above, a performing rights society is "an association or corporation that

licenses the public performance of nondramatic musical works." In its decision regarding the 1984 royalties, the Tribunal interpreted the words "association or corporation" to mean "an organization at least independent enough of copyright owners to have its own organizational papers and structure." 51 Fed.Reg. 43457 (1986). Applying that definition in this case, the Tribunal held that in 1985 ACEMLA was not sufficiently independent of copyright owners, in part because ACEMLA was indistinguishable from the Latin American Music Company (LAMCO), a music publishing company. ACEMLA challenges the Tribunal's definition of "corporation" as impermissibly preventing publishers from being or becoming performing rights societies.

This challenge to the definition of "corporation" is foreclosed by our decision in *ACEMLA III.* ACEMLA claims that we did not rule on the definition of "corporation" in that case, but in denying review of the Tribunal's decision we noted that

> we find no error in the CRT's [the Tribunal's] application of those standards to ACEMLA in this proceeding for 1984. The CRT found that ACEMLA had no system for membership and affiliation and was not a corporation in its own right; it was only an assumed name for LAMCO, a music publishing company. On these facts, supported by substantial evidence in the record, the CRT concluded that ACEMLA did not meet the first standard, because ACEMLA was neither an association nor a corporation.

835 F.2d at 448. We thus impliedly affirmed the Tribunal's interpretation of the statute.

Even if we had not previously approved the Tribunal's interpretation, we would do so now under the standard that governs review of administrative actions like this. See *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984) ("court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency" provided that Congress has not expressed a clear view of the law) (footnote omitted).

ACEMLA argues that the Tribunal's interpretation is unreasonable for two reasons. First, ACEMLA claims the Tribunal violated the principle of competition underlying the antitrust laws because it limited publishers' ability to become performing rights societies and to compete with the already existing societies. However, ACEMLA misconstrues the Tribunal's rule when it argues that the rule prevents publishers from "becoming" performing rights societies. A publisher can become a performing rights society by altering its mix of business so as to become primarily a performing rights society or by spinning off an independent entity to do performing rights licensing. It is true that the Tribunal's rule does prevent organizations that are primarily publishers from being performing rights societies at the same time as part of the same entity. However, this does not make the rule arbitrary. The policy in favor of competition does not always supersede all other national policies. Indeed, in the context of the Tribunal, Congress has specifically exempted some activity of royalty claimants from the antitrust laws, see 17 U.S.C. 116(c)(2). The Tribunal's interpretation of the "corporation" requirement thus does not limit competition more than a reasonable person might think Congress intended.

ACEMLA's second argument against the Tribunal's distinction between publishers and performing rights societies is that SESAC—recognized by the statute as a performing rights society—also functions as a publisher, implying that publishers may be performing rights societies. The Tribunal responds that it does not forbid performing rights societies from also conducting small amounts of publishing, but only holds that an entity that is "essentially" a publisher cannot be a performing rights society. 52 Fed.Reg. 46328 (1987). The Tribunal found that "SESAC may at times carry on some functions as a music publisher," but that "the record indicates that it chiefly collects ... performing rights royalties." Id. at 46327. However, ACEMLA claims that

there is "not one iota of evidence in the record to support" this conclusion.

The Tribunal and Intervenors certainly have not made it easy for a reviewing court to determine whether the Tribunal's findings about SESAC were proper. For example, the appendix prepared by the parties contains only excerpts from the hearing before the Tribunal, and the gaps were not easily filled because the record filed with the court contains only a list of documents, not the documents themselves. The briefs frequently state facts or make claims about the content of the record without citations to the underlying evidence or testimony. Similarly, when (in response to a request from the court at oral argument) intervenors filed a letter informing us of where in the record SESAC's publishing activity was discussed, they quoted material not in the appendix and also not available in the filed record. In the future, we expect the Tribunal and all claimants who appear before this court to furnish us, in easily available form, with the record support for their arguments.

Nonetheless, we conclude that the Tribunal was not arbitrary or capricious in distinguishing between SESAC and ACEMLA. In the excerpt from the hearing before the Tribunal that was forwarded to us by intervenors without objection by petitioners, ASCAP's director of membership testified that SESAC was independent from, and did not act as, a publisher in 1976 (the year the copyright statute was passed) or in 1985 (the year in issue). We also note that in their "Reply Findings of Fact and Conclusions of Law" before the Tribunal, ASCAP, BMI and SESAC referred the Tribunal to descriptions of SESAC in the legislative history. For example, SESAC's house counsel testified before a House Judiciary Subcommittee that SESAC is "primarily a music performance rights licensing organization" although he acknowledged that it did some other work as well. Copyright Law Revision Hearings on H.R. 4347, H.R. 5680, H.R. 6831, H.R. 6835 Before Subcomm. No. 3 of the House Comm. on the Judiciary, 89th Cong., 1st Sess. 222 (1975). See also Copyright Law Revision Hearings on H.R. 2223 Before the Subcomm. on

Courts, Civil Liberties, and the Admin. of Justice of the House Comm. on the Judiciary, 94th Cong., 1st Sess. 398–410 (1975) (SESAC's counsel "testifying on behalf of the performing rights industry"). On the basis of this and other information in the record, the Tribunal could properly have found that SESAC was sufficiently independent from copyright owners to be primarily a performing rights society, while ACEMLA and IBC were not.

 We therefore find that the Tribunal's interpretation of the "corporation" requirement is reasonable. Because Congress distinguished between performing rights societies and copyright owners, it is reasonable to interpret the statute as preventing entities that function primarily as owners from also being performing rights societies. In addition, it is reasonable to classify publishers and sub-publishers as owners since they are involved in rights other than performing rights. We also find that the Tribunal was not arbitrary in finding that ACEMLA was not a performing rights society in 1985 since it was reasonable for the Tribunal to find that ACEMLA had no independent existence, that any licensing it did was as a music publisher, that its relationship (if any) to music emanating from the Dominican Republic was not relevant to 1985, and that it made no distributions of royalties in 1985 to any individual or entity with which it had an association. Similarly, the Tribunal did not act improperly in finding that IBC was primarily a music sub-publisher, since the evidence supports the finding that IBC had no distribution system and did not pay song writers directly but dealt only with the Italian publishers for which it worked.

 Petitioners also claim that their constitutional right to equal protection was denied because they were required to prove their entitlement to royalties, but intervenors—who had agreed as to the division among themselves—were not required to submit proof. This issue was also raised in *ACEMLA III*, although not discussed in our opinion. As we impliedly held there by denying the petition, neither Congress nor the Tribunal violated the Constitution by distinguishing between performing rights societies and others, because the distinction

reflects the reality of the marketplace and therefore is not fundamentally irrational. See *City of New Orleans v. Dukes*, 427 U.S. 297, 303–04, 96 S.Ct. 2513, 2516–17, 49 L.Ed.2d 511 (1976).

## II. Award to ACEMLA and IBC

Finally, there is ample evidence to support the Tribunal's award of .12% of the jukebox royalty fees to ACEMLA and IBC. Petitioners bore the burden of proving entitlement, and their proof was scanty at best. Moreover, the Tribunal is entitled to judge the credibility of witnesses and to decide what inferences to draw from the evidence. In view of the record before it, the Tribunal arrived at an award that is within the "zone of reasonableness" established by the evidence. *ACEMLA III*, 835 F.2d at 449.

The petition for review is denied.