Taalib–Din Abdul UQDAH, Pamela Ferrell, and Cornrows and Company, Plaintiffs,

v.

DISTRICT OF COLUMBIA et al., Defendants.

Civ. A. No. 91–2824.

United States District Court, District of Columbia.

Feb. 21, 1992.

William Mellor, III, Clint Bolick, Jonathan W. Emrod, Scott G. Bullock, Institute for Justice, Washington, D.C., for plaintiffs.

Jack Simmons, Asst. Corp. Counsel, Washington, D.C., for defendants.

## MEMORANDUM OPINION AND ORDER

SPORKIN, District Judge.

This action is a constitutional challenge to the District of Columbia's current cosmetology regulations. Plaintiffs own and operate Cornrows and Company ("Cornrows"), an African hair styling salon and school established in 1980 and located in the District of Columbia. Defendants are the District of Columbia and the six members of the D.C. Board of Cosmetology.

The case comes before the Court on the Defendant, District of Columbia's, Motion to Dismiss or, in the Alternative, for Summary Judgment. See Fed.R.Civ.P. 12(b)(6), 56(c). Because there are no genuine issues of material fact and Defendants are entitled to judgment as a matter of law, summary judgment will be granted and this case will be dismissed with prejudice.

## BACKGROUND

Summary judgment may be granted to the moving party if

"the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law."

Fed.R.Civ.P. 56(c). Under *Celotex Corporation v. Garret*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986), summary judgment is appropriate "against a party who fails to make a showing sufficient to establish an element essential to that party's case and on which that party will bear the burden of proof at trial." In deciding a motion for summary judgment a district court must view the available evidence in a light most favorable to the non-moving party. *Adickes v. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Therefore, for the purposes of this motion, the court accepts the following facts as not in dispute.

The District of Columbia Code ("Code") empowers the D.C. Council to make, and creates the Board of Cosmetology ("Board") to enforce, such rules and regulations as it deems necessary to regulate the teaching and practice of cosmetology in the District of Columbia. *See* D.C.Code 2–901 *et seq.* (1981). In the relevant portion of the Code, "cosmetology" is defined as follows:

" 'cosmetology' shall be defined and shall include, but otherwise shall not be limited thereby, the following or any one or a combination of practices, to wit: Arranging, dressing, styling, curling, waving, cleansing, cutting, removing, singeing, bleaching, coloring, or similar work upon the hair of any person by any means, and with hands or mechanical or electrical apparatus or appliances or by the use of cosmetic preparations, antiseptics, tonics, lotions, or creams, massaging, cleansing, stimulating, exercising, beautifying, or similar work, the scalp, face, neck, arms, bust or upper part of the body, or manicuring the nails of any person."

D.C.Code § 2–901(1). The D.C.Code provides that "[i]t shall be unlawful for any person to practice cosmetology for pay in any place other than a registered beauty shop." D.C.Code § 2–912. Beauty shops are defined as "any building or portion of a building within the District of Columbia in which any person ... is engaged in the practice of cosmetology." 17 DCMR § 3899.1. In order to comply, a beauty shop must meet certain requirements.

First, the D.C. Council has promulgated regulations dealing with the health and safety of beauty shops.[1] Second, each

1. These regulations are found at Title 17, Chapter 38 of the *District of Columbia Municipal Code*. They cover the beauty shop's physical plant, minimal required equipment, and necessary sanitation and hygiene procedures.

The regulations cover many aspects concerning the safety of a beauty shop's physical plant. Section 3807.1 *et seq.* regulates the proper amount of mechanical or natural ventilation systems for beauty shops including special ventilation requirements concerning toilet areas. Sections 3808.1 *et seq.* provide for fire prevention and control in beauty shops. Sections 3811 *et seq.* specify structural requirements, including that each beauty shop must have at least one water closet and maintain a minimum illumination intensity of thirty foot candles at each work stand. Finally, Sections 3810.1 *et seq.* require that a beauty shop submit its floor plan to the Department of Human Services to facilitate compliance review.

The regulations also require that a beauty shop have certain supplies and equipment on hand, many of which deal with sanitation. Sections 3812 *et seq.* require each shop to have one sink for general purposes and one shampoo sink with shampoo fittings. Section 3812.10 also requires a beauty shop have covered metal containers for all waste material, supplies of disinfectant, fungicide, clean laundered towels, hair capes, shampoo capes, a hair dryer, neck strips and dispensers, a manicure table, and an all purpose chair. In addition, each beautician is required to have two sets of any equipment which requires sterilization between uses as well as six combs, and four brushes. *Id.*

The regulations also mandate certain procedures in a beauty shop aimed at maintaining public health standards. For example, sections 3815 *et seq.* set out a list of procedures aimed at maintaining a sanitary environment. Windows, floors and halls must be kept clean at all times. *See* § 3815.1. The regulations prohibit preparing meals or storing a bed or bedding in a beauty shop. *See* § 3815.3–3815.4. Toilets must be kept clean and signs must be posted requiring employees to wash their hands immediately after each use of the water closet. *See* § 3815.7. The laundering process for towels is strictly controlled so that the amount of viable organisms "shall always be below twenty-five (25) organisms per square inch of material." *See* § 3815.14. Sections 3816 *et seq.* set specific requirements for sanitation of tools and implements. Each comb or brush must be disinfect-

beauty shop must have at least one person on duty at all times who is specially licensed and trained as a "managing cosmetologist." *See* 17 DCMR §§ 3824 *et seq.* Third, the Code also provides that "[i]t shall be unlawful for any person ... to practice or teach cosmetology or manage a beauty shop ... unless he or she shall have first obtained from the Board a certificate of registration ..." D.C.Code § 2–906. All licensed practitioners and managers are required to display their licenses in prominent locations. *See* 17 DCMR § 3802. The beauty shop must not only display its registration but must be accessible at all times for inspection by members of the Board of Cosmetology or the Director of Human Services. *See* 17 DCMR §§ 3801 *et seq.*

To become a person licensed to practice cosmetology one must register with the Board and pass an examination. D.C.Code § 2–907. Before taking the examination and receiving a certificate of registration certain requirements must be met. An applicant must be 16 years of age and must have completed a 1,500 hour training course at a registered school of cosmetology or served as an apprentice with a registered teacher of cosmetology.

To be registered to teach cosmetology, a school must hire a doctor as a consultant, must employ registered and qualified instructors, and must offer the required 1,500 hour training course over an 8–month period. *See* D.C.Code § 2–910. This training course must be:

> "a complete course comprising all or the majority of the practices of cosmetology as provided in this chapter; and to include practical demonstrations and theoretical studies in sanitation, sterilization, and the use of antiseptics, cosmetics, and electrical appliances consistent with the practical and theoretical requirements as applicable to cosmetology or any practice thereof."

*Id.* Thus, in order to practice cosmetology, a person must complete a training course and pass an examination covering "all or the majority" of cosmetology practices. The D.C.Code allows the District to grant a limited certificate of registration for "any one or a combination of practices." *See* § 2–909. Currently, such a limited license is only available for those cosmetologists who limit their practice to shampooing, manicuring, and performing facials.

The District of Columbia has set up a scheme to regulate both the people who practice and teach cosmetology for pay and the places where cosmetology is practiced or taught. The regulations are designed in large part to allow the District to monitor the health and safety of cosmetologists and the places where such services are provided.

Plaintiffs, Cornrows and its owners, are practitioners and teachers of African hair styling. Complaint at ¶ 8. They currently serve over 20,000 paying customers from their location in the District of Columbia. *See* Plaintiff's Memorandum In Support of Temporary Restraining Order at 2. Cornrows provides its customers with "a specialized and artistic form of hair styling consisting primarily of hair braiding, hair extensions, and cornrows." Complaint at ¶ 8. To this end, Cornrows performs a variety of hair styling and hair care services. Cornrows shampoos its customers' hair, blow dries their hair, twists or braids their hair, and adds hair extensions. Plaintiffs emphasize that their hair styling is entirely chemical free. Cornrows' services are labor intensive, and require customers to spend long periods of time in the salon. As Plaintiffs state, one visit to the salon "usually takes between half a day and an entire day." Complaint at ¶ 9.

Plaintiffs are cosmetologists under District of Columbia law and as such are subject to the licensing requirements currently

---

ed after every use. *See* § 3816.5. Sections 3818 *et seq.* provide procedures designed to maintain "hygiene." Operators are not permitted to carry combs or other instruments in their pockets. *See* § 3818.11. Hands must be cleansed thoroughly with soap and running water immediately before serving each patron. *See* § 3818.16.

No person may practice cosmetology when suffering from a communicable disease. *See* § 3818.19. Finally, sections 3819 *et seq.* provide that operators may not serve "infected or infested" patrons including patrons with inflamed or pus filled scalps or patrons with head lice. *See* § 3819.1–3819.2.

in force in the District.[2] Plaintiffs have not met either the licensing requirements for a beauty shop or a cosmetology school. They currently employ operators who have not completed a qualified cosmetology course or passed the required examination. Plaintiffs teach their hair styling techniques without registering or otherwise meeting the requirements of a licensed cosmetology school. Cornrows does not employ or have on its premises a person trained and licensed as a "manager" as required by law.

## DISCUSSION

Plaintiffs argue that the District's cosmetology regulations, as applied to them, violate their Constitutional rights of due process and equal protection of law. Plaintiffs assert that they limit their activities to a small and unique segment of what the District defines as "cosmetology." They argue that to require them to become fully licensed, in the same way as those offering more complete and traditional cosmetology services, is arbitrary and is not rationally related to the legitimate end of furthering public health, safety, and welfare. Plaintiffs claim that such regulation results in an "arbitrary diminution of plaintiffs' economic liberty" and violates their so-called right to substantive due process of law. Plaintiffs also assert that the current regulatory scheme violates their right to equal protection under law because it does not provide "an equal opportunity for individuals trained in the practice of African hair styling to lawfully offer their services to the public." Complaint at ¶ 33. Because Plaintiffs' claims have no basis in law they must be dismissed.

### A. Due Process

■ Plaintiffs' case presents this Court with strong equitable arguments against the District's current regulatory scheme. Plaintiffs provide only limited cosmetology services. Plaintiffs claim that the requisite training for a cosmetology license only marginally covers the skills needed for African hair styling. The District, however, refuses to provide a limited cosmetology license for Plaintiffs' services. Although Plaintiffs make a strong policy argument, our Constitutional scheme of government demands that such policy questions be resolved by the legislature, not the courts. As the Supreme Court has stated:

> "The doctrine ... that due process authorizes courts to hold laws unconstitutional when they believe the legislature has acted unwisely—has long since been discarded.... Courts do not substitute their social and economic beliefs for the judgment of legislative bodies, who are elected to pass laws."

*Ferguson v. Skrupa*, 372 U.S. 726, 730, 83 S.Ct. 1028, 1031, 10 L.Ed.2d 93 (1963); *See also U.S. v. Carolene Products*, 304 U.S. 144, 58 S.Ct. 778, 82 L.Ed. 1234 (1938) (economic regulation presumed constitutional if rests on some "rational basis"). In *Skrupa* the Court upheld, against the plaintiff's due process challenge, a Kansas law which required that a person become a licensed attorney before engaging in the business of debt adjusting.

Like the Kansas law in *Skrupa*, the District's cosmetology regulations have a rational relationship to a legitimate government objective. The District of Columbia regulations are aimed at the legitimate goal of protecting the public health safety and welfare. Many of the regulations governing beauty shops require sanitation standards which are applicable to cosmetology as a whole, including African hair styling. In addition, the training course specifically requires "studies in sanitation, sterilization, and the use of antiseptics." D.C.Code § 2–910. Thus, the District's cosmetology regulations are rationally related to the goal of providing clean and safe cosmetology services to the public.

---

**2.** The question of whether Plaintiffs are "cosmetologists" is one of District of Columbia law. The District of Columbia Board of Appeals and Review affirmed that Cornrows "is operating a beauty shop and offering cosmetology services," *Taalib–Din Abdul Uqdah v. Department of Con-* sumer and Regulatory Affairs, BAR Docket No. 90–3438, slip op. at 7 (September 11, 1991) ("BAR Opinion"), and "[p]laintiffs have never contested that finding." P. Memorandum at 13. Similarly, this Court does not question that state law determination.

By mandating uniform training, licensing, and inspection, the District can monitor all cosmetology services available within its borders.

It may be true that other parts of the required training have little to do with African hair styling. Much of the legal training required in *Skrupa,* however, was no doubt irrelevant to the business of debt adjusting. One can only imagine the chaos that would result if states were required to maintain separate regulatory schemes for each specialty field within an area of regulation. For instance, would securities lawyers be exempted from taking required courses in civil rights law or be required to pass only the portions of the bar examination that dealt with the securities laws? The fourteenth amendment cannot be read to impose such rigid restrictions on a local government's social or economic regulations.

The District of Columbia may have used a broad brush to regulate cosmetology. The due process clause, however, does not permit the Court to scrutinize social or economic regulation with a fine toothed comb or to become involved in the business of legislating from the bench. Thus, while this Court strongly believes the D.C. Council should consider Plaintiffs' plight it rejects the argument that the due process clause of the Constitution requires the D.C. Council to do so.

## B. Equal Protection

The District of Columbia cosmetology regulations do not violate Plaintiff's right to equal protection under law. Plaintiffs are being treated exactly the same as anyone else who wishes to practice cosmetology in the District of Columbia.

Plaintiffs are not satisfied with such uniform regulation. In fact, Plaintiffs seek to use the equal protection clause to gain preferential treatment for themselves. At argument, counsel for Plaintiffs asserted that one problem of the current regula-

tory scheme was that once licensed as cosmetologists, Cornrows' employees could leave its employ and offer competitive services. If Plaintiffs' operators were granted only a limited license, they argue, they would not be able to readily leave Cornrows and form a competitive operation. The equal protection clause does not guarantee an individual the right to create a monopoly for a certain service or the ability to lock employees into their jobs.[3] In fact, the creation of a fluid market for hair styling services is a strong rationale in favor of the uniform regulations adopted by the District.

The existence of certain limited licenses for those who provide manicures, facials and shampoos does not render the scheme violative of Plaintiffs' equal protection rights. The Supreme Court has held that, "When local economic regulation is challenged solely as violating the Equal Protection Clause, this Court consistently defers to legislative determinations as to the desirability of particular statutory discriminations." *City of New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976) (*per curiam*). In *Dukes,* the Court upheld a New Orleans ban on all but two of the older pushcart vendors in the French Quarter, finding that "rational distinctions may be made with substantially less than mathematical exactitude." *Id.* Similarly, granting a limited cosmetology license to some does not mandate that Plaintiffs receive such a license. There are a number of reasons that the District could believe that Plaintiffs should meet the full range of regulatory requirements. The District might have concluded that Plaintiffs provide a wider range of services than those areas of cosmetology for which a limited license is available. The District might also have taken into account the substantial length of time that customers spend in Plaintiffs' shop. Whether these distinctions are wise is not before the Court. Under the equal protec-

---

**3.** Plaintiffs did not provide the Court with an understandable explanation as to why it is impossible for them to comply with the licensing requirements to practice and teach cosmetology, although it is clear that these requirements would be extremely onerous for them in light of the limited nature of the services they provide.

tion clause "in the local economic sphere, it is only the invidious discrimination, the wholly arbitrary act, which cannot stand consistently with the Fourteenth Amendment." *Id.* at 303–304, 96 S.Ct. at 2517. Since the District Columbia's cosmetology regulatory scheme meets all relevant legal requirements, all Plaintiffs' claims are dismissed.[4]

A separate order accompanies this opinion.

### ORDER

Upon consideration of the entire record in the above captioned matter, Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment, and Plaintiffs' opposition thereto it is this 21 of Feb., 1992 hereby

ORDERED that Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment is GRANTED and it is hereby

FURTHER ORDERED that this case is dismissed with respect to all Defendants and it is hereby

FURTHER ORDERED that judgment be entered in favor of all Defendants on all counts.

---

**4.** Having upheld the District of Columbia's cosmetology regulations should not be taken as this Court's view that Plaintiffs' position is without equitable merit. Here is a well run business that has been in operation since 1980. It provides a needed service to the community in an effective manner. In the present state of the nation's and this community's economic problems, it is difficult to understand why the District of Columbia wants to put a legitimate business out of operation. Certainly the D.C. Council can exercise sound judgment and common sense to accommodate Plaintiffs' needs without doing violence to its important cosmetology regulations. Having heard this case, the Court would certainly urge the District to consider the plight of Plaintiffs and the good citizens they have faithfully served for over twelve years. At the least the District should give the Plaintiff a reasonable time to either obtain a "limited license" from the D.C. Council or to come into compliance with the existing regulations. Of course, any such forbearance on the part of the District would require that Plaintiffs continue to meet the applicable health and sanitation regulations.